IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAE BARBEE and DONNA TRONE, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>NAVIHEALTH, INC.,<br><br>  Defendant. | Case No:<br><br>JURY TRIAL DEMANDED<br><br>Collective Action |

# COLLECTIVE ACTION COMPLAINT

## INTRODUCTION

Plaintiffs Mae Barbee and Donna Trone ("Plaintiffs") file this collective action complaint against Defendant naviHealth, Inc. ("Defendant"), and for their cause of action state as follows:

## PARTIES

1. Plaintiffs are former employees of Defendant, naviHealth, Inc., who bring this action to remedy Defendant's violations of federal law. Plaintiffs bring this lawsuit on behalf of themselves and all other employees similarly situated as a collective action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), because of Defendant's unlawful deprivation of plaintiffs' rights to overtime compensation. Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable relief, and other relief available under the FLSA, 29 U.S.C. §§ 201–19.

2. Plaintiffs have given their written consent to be party plaintiffs in this action. *Id.* § 216(b). Such written consents are appended to this Collective Action Complaint.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over the instant collective action. 28 U.S.C. §§ 1331, 1337; 29 U.S.C. § 216(b).

4. Venue is proper in this District, because Defendant resides here. 28 U.S.C. § 1391(b)(1).

## FACTS

5. Plaintiff Mae Barbee ("Barbee") has been, at all material times herein until September 28, 2018, employed by naviHealth as a Licensed Practical Nurse ("LPN") in the positions of "Utilization Review Coordinator" and "Quality Improvement Organizational Appeals Coordinator."

6. Plaintiff Donna Trone ("Trone") has been, at all material times herein until September 28, 2018, employed by naviHealth as an LPN in the positions of "Pre-service Care Coordinator" and "Flex Team Pre-service Care Coordinator."

7. Plaintiffs bring this action for a declaratory judgment, back pay, and other relief under the FLSA to remedy Defendant's willful and unlawful violations of federal law. 29 U.S.C. §§ 207, 216(b).

8. At all times material herein, Plaintiffs, while employed by Defendant, were "employees" within the meaning of the FLSA, *id.* § 203(e)(1).

9. Defendant naviHealth, Inc. is an employer within the meaning of the FLSA, *id.* § 203(d). naviHealth's principal office and place of business is located at 210 Westwood Place, Suite 400, Brentwood, Tennessee 37027-7554. Its registered agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

10. naviHealth, Inc. manages post-acute care and care transitions on behalf of health plans, hospitals, health systems, and post-acute providers in the United States. It offers clinical service support, proprietary technology, and advisory solutions for payers and providers. The company provides clinical support services, such as coordinating care in the acute and post-acute setting. naviHealth has in its possession, custody, and control all the employment records of Plaintiffs and those similarly situated.

11. Within the last three years until September 28, 2018, while working as an LPN on behalf of Defendant, Barbee worked from home. Her primary job duty was to review patient appeals regarding the decision to discharge a patient from a Skilled Nursing Facility ("SNF"). In carrying out her assignments, Barbee compared the patient's case files against well-established industry guidelines for discharge. If the reasons for discharge aligned with the established guidelines, Barbee prepared a form letter of explanation to the patient explaining the rationale for the discharge from the SNF. If the justifications for discharge did not align with the well-established industry guidelines, Barbee notified the naviHealth medical director who would then review the case and decide whether discharge was appropriate. Barbee had neither discretion to discharge a patient nor discretion to grant or deny a patient's appeal of a discharge decision.

12. Within the last three years until September 28, 2018, Barbee, and all others similarly situated, worked approximately 44 to 56 hours per week. Each day, Monday through Friday, she started her workday at 8:00 a.m. and stopped working between approximately 6:00 and 7:00 p.m. and, at times, worked up until 10:00 p.m. Additionally, Barbee was unable to take a duty-free meal period on any day due to the volume of work Defendant required.

13. For example, in the workweek beginning August 15, 2016, Barbee began her workday at 8:00 a.m. and ended her workday at approximately 7:00 p.m. each day. She was

3

Case 3:19-cv-00119   Document 1   Filed 02/06/19   Page 3 of 9 PageID #: 3

unable to take a duty-free meal period on any of these days. Barbee thus worked 55 hours this week, and Defendant failed to compensate her for 15 of those hours.

14. For example, in the workweek beginning June 4, 2018, Barbee began her workday at 8:00 a.m. each day. She ended her workday at 7:00 p.m. on Monday, Tuesday, and Friday and at 8:30 p.m. on Wednesday and Thursday. She was unable to take a duty-free meal period on any of these days. Barbee thus worked 58 hours this week, and Defendant failed to compensate her for 18 of those hours.

15. Time-stamped emails from Barbee to naviHealth management show that Barbee worked hours in excess of 40 hours a week for which she was not paid. naviHealth management knew or should have known that Barbee, and all those similarly situated to her, worked in excess of 40 hours a week without pay.

16. Within the last three years until September 28, 2018, while working as an LPN on behalf of defendant, Trone worked from home. Her primary job duty was to review provider requests to transfer patients from hospitals to facilities providing post-acute care. Trone compared the patient's clinical chart against the applicable well-established criteria to determine whether the criteria were met for the request for post-acute care. The applicable criteria used in the review depended on whether the request for post-acute care was for an SNF, an in-patient rehabilitation facility ("IRF"), or long term acute care admission ("LTAC"). No matter which type of post-acute care was requested, Trone was required to adhere to strict guidelines in determining whether criteria were or were not satisfied for the requested transfer. For example, for an IRF/LTAC request, Trone compared the patient's clinical file against InterQual and LiveSafe criteria and then submitted the request for the transfer to the medical director to review and to make the final determination of whether to approve or deny the request.

17. Within the last three years until September 28, 2018, Trone, and all others similarly situated, worked approximately 44 to 56 hours per week. From August 2018 until September 28, 2018, plaintiff started her workday at 11:00 a.m. on two days per week, 7:30 a.m. on two days per week, and 8:00 a.m. on one day per week. Each day, she stopped working at approximately 6:30 p.m. and, at times, worked up until 9:00 p.m. Additionally, Trone was unable to take a duty-free meal period on most days due to the volume of work Defendant required. During this period, Trone worked approximately 47 hours per week, sometimes more, but Defendant failed to compensate her for any hours worked over 40.

18. From November 2017 until August 2018, Trone started her workday at 7:30 a.m. on two days per week and at 8:00 a.m. on three days per week. Each day, she stopped working at approximately 7:00 p.m. and, at times, worked up until 9:00 p.m. Trone was unable to take a duty-free meal period on most days due to the volume of work Defendant required. During this period, Trone worked approximately 55 hours per week, sometimes more, but Defendant failed to compensate her for any hours worked over 40.

19. From 2016 until November 2017, Trone started her workday at 9:00 a.m. on five days per week and stopped working at approximately 7:00 p.m. and, at times, worked until 9:00 p.m. Trone was unable to take a duty-free meal period on most days due to the volume of work Defendant required. During this period, Trone worked approximately 50 hours per week, sometimes more, but Defendant failed to compensate her for any hours worked over 40.

20. From 2014 until 2016, Trone worked four days per week. She started her workday at 7:00 a.m. and stopped working at approximately 6:00 p.m. and, at times, worked up until 9:00 p.m. Trone was unable to take a duty-free meal period on most days due to the volume of

5

work Defendant required. During this period, Trone worked approximately 44 hours per week, sometimes more, but Defendant failed to compensate her for any hours worked over 40.

21. When Trone, and all those similarly situated to her, began work each morning, she turned on her phone and activated Skype. Trone's Skype remained on and activated until she finished working each shift. naviHealth management knew or should have known when she was on-line and working.

22. During the weeks that Barbee and Trone, and all others similarly situated, have worked in excess of 40 hours, Defendant naviHealth has failed to pay Plaintiffs, and all others similarly situated, overtime compensation at the rate of one-and-one-half times the regular rate of pay for all hours worked in excess of 40 during the workweek.

23. Within the last three years until September 28, 2018, Plaintiffs routinely performed the tasks referenced in paragraphs 11 and 15 throughout their workweeks, without a duty-free meal period, normally more than 8 hours per day (and up to 11 hours a day), causing them to work in excess of 40 hours in a workweek, for which Defendant denied Plaintiffs proper compensation. The precise amount of uncompensated work time Plaintiffs, and those similarly situated, performed can be identified through Defendant's records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS WERE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7 OF THE FLSA, 29 U.S.C. § 207

24. Plaintiffs hereby incorporate by reference paragraphs 1 through 23 in their entirety and restate them.

25. During the times that Plaintiffs, and all others similarly situated, have worked in excess of 40 hours in a workweek, Defendant has not compensated such work at the rate of one-and-one-half times their regular rate of pay.

26. Section 7(a) of the FLSA provides that employees shall be paid overtime compensation at a rate of not less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

27. Defendant has violated the FLSA by failing and refusing to compensate Plaintiffs, and all other similarly situated employees, at a rate of not less than one-and-one-half times their regular rate of pay in workweeks in which Plaintiffs and all those similarly situated worked 40 or more hours per week. *Id.*

28. Defendant's violations of the FLSA have been done in a willful and bad-faith manner.

29. As a result of the Defendant's willful and purposeful violations of the FLSA, there has become due and owing to Plaintiffs, and all those similarly situated, an amount that has not yet been precisely determined. Defendant maintains exclusive possession, custody, and control of the employment and work records for Plaintiffs, and Plaintiffs are unable to state at this time the exact amount owing to them. The FLSA, as well as various other statutory and regulatory provisions, imposes a duty on Defendant to maintain and preserve payroll and other employment records with respect to Plaintiffs and all other employees similarly situated from which the factfinder can ascertain the amount of Defendant's liability. *Id.* § 211(c).

30. Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for Defendant's failure to pay overtime compensation. *Id.* § 216(b).

31. Plaintiffs are entitled to recover attorneys' fees and costs. *Id.*

## DEMAND FOR A JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that this Court impanel a jury to try their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

    a.    Issue process against Defendant and require it to answer within the period provided by law;

    b.    Require Defendant to provide Plaintiffs the names, phone numbers, e-mail addresses, and addresses for each LPN similarly situated to them and permit Plaintiffs to issue notice to all similarly situated employees;

    c.    Give all similarly situated employees the opportunity to join this collective action as party-plaintiffs by filing written consents under 29 U.S.C. § 216(b);

    d.    Enter judgment declaring that Defendant has willfully and wrongfully violated its statutory obligations and deprived Plaintiffs, and all those similarly situated, of their rights;

    e.    Order a complete and accurate accounting of all the compensation to which Plaintiffs, and all those similarly situated, are entitled;

    f.    Award Plaintiffs, and all those similarly situated, compensatory relief equal to their unpaid compensation and liquidated damages equal to their unpaid compensation;

    g.    Award Plaintiffs, and all those similarly situated, interest on their unpaid compensation;

h. Award Plaintiffs, and all those similarly situated, their reasonable attorneys' fees to be paid by Defendant, as well as the costs and disbursements of this action; and

i. Grant such other relief as may be just and proper.

Dated: February 6, 2019 Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TBPR #18965)

/s/ *N. Chase Teeples*
N. Chase Teeples (TBPR #032400)
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road
Suite B-200
Nashville, TN 37215
(615) 250-2000
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

/s/ *Molly A. Elkin*
Molly A. Elkin
*Pro Hac Vice Admission To Be Filed*
Hillary D. LeBeau
*Pro Hac Vice Admission To Be Filed*
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090
mae@wmlaborlaw.com
hl@wmlaborlaw.com