**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| MAE BARBEE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No: 3:19-cv-00119 |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | Collective and Class Action |
| | ) | |
| | ) | |
| NAVIHEALTH, INC., | ) | Judge Waverly D. Crenshaw |
| | ) | Magistrate Judge Alistair Newbern |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND
RULE 23 SETTLEMENT CLASSES**

Plaintiffs Mae Barbee, Donna Trone, Sheree Montgomery, and Mary Beth Herwald ("Plaintiffs" or "Named Plaintiffs") and Defendant, naviHealth, Inc. ("Defendant" or "naviHealth") (collectively the "Parties"), respectfully move this Court for preliminary approval of the class action and collective action settlement in this matter (Exhibit 1 - Settlement Agreement) and to certify the Pennsylvania State Law Class, as described below, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(e), and to certify the collective action under the Fair Labor Standards Act ("FLSA") for settlement purposes only.

## I.    INTRODUCTION

The Parties seek preliminary approval of the proposed Settlement Agreement for the class and collective action claims ("Settlement Agreement" or "Agreement"), attached as Exhibit 1. Under the terms of the Agreement, Defendant will pay a maximum Gross Settlement Amount of

1

$4,690,000.00 to resolve all claims brought by the Named Plaintiffs, current Opt-In Plaintiffs, FLSA Putative Class Members, and Rule 23 Class Members (collectively, "Settlement Class Members") – 1,191 people – under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, ("FLSA Class") and a Rule 23, opt-out class action brought pursuant to the Pennsylvania Minimum Wage Act ("PWMA"), 43 P.S. §§333.101-333.115. 50-4-19, *et seq.* ("State Law Class").

Because the proposed Settlement Agreement is "fair, reasonable and adequate," provides Settlement Class Members with substantial monetary relief, and satisfies all other criteria for preliminary approval, the Court should grant this motion. The Parties request that the Court enter an Order, in the form attached hereto as Exhibit 2, that: (1) preliminarily approves the Settlement Agreement; (2) approves the FLSA settlement notice attached as Exhibit B to the Agreement (the "FLSA Notice") and the FLSA Opt-in Form attached as Exhibit C to the Agreement (the "Opt-In Form"); (3) approves the Rule 23 settlement notice attached as Exhibit D to the Agreement (the "Rule 23 Notice") and the Rule 23 Claim Form attached as Exhibit E to the Agreement (the "Rule 23 Claim Form"); (4) appoints Rust Consulting, Inc. as the Settlement Administrator; (5) certifies the FLSA collective action pursuant to 29 U.S.C. §216(b) for settlement purposes only; (6) preliminarily certifies the State Law Class for settlement purposes only under Fed. R. Civ. P. 23(e); (7) appoints Plaintiffs' Counsel as Class Counsel; and (8) sets a Final Approval and Fairness Hearing on a date approximately ninety-five (95) days from the date of the Preliminary Approval Order.

## II.    **BACKGROUND AND PLAINTIFFS' ALLEGATIONS**

Named Plaintiffs filed the Amended Complaint on April 12, 2019 (Dkt. 31), asserting FLSA and PMWA claims to recover alleged unpaid overtime wages on behalf of current and former "Care Management Employees," or "CMEs" (as defined below). The case was filed as a

2

collective action under the FLSA and as a Rule 23 class action for the PWMA claims. *Id.* Plaintiffs allege that they were salaried workers who worked in excess of 40 hours per week without receiving overtime pay and that no exemption to the state and federal overtime laws are applicable. *Id.* Defendant denies that any of the Plaintiffs or members of the Settlement Class were improperly classified as exempt under state or federal law and further contends that its classification of these workers was done in good faith and that any potential misclassification was not willful. Moreover, absent settlement, Defendant contends that neither collective action treatment under Section 216(b) of the FLSA, nor class action treatment of the PMWA claims under Fed. R. Civ. P. 23 is appropriate. Further, absent settlement, Defendant contends that its Arbitration Agreements signed by 70% of the Settlement Class Members would preclude 837 of the 1,191 Settlement Class Members from participating in this (or any class or collective action) litigation. In addition, Defendant contends that absent settlement, Severance Agreements executed by 48 Settlement Class Members would preclude these individuals from participating in this action.

Defendant naviHealth offers services through various clinicians that can favorably influence the path of treatment received by Medicare beneficiaries ("Beneficiaries") from the moment of admission to the hospital (or the "Acute" setting) through admission to a post-acute care ("PAC") setting to discharge home. naviHealth participates in the Bundled Payments for Care Improvement ("BPCI") initiative created by the Center for Medicare and Medicaid Services ("CMS") to reduce Medicare expenditures while preserving and enhancing the quality of care for patients. Participating providers (typically hospitals) contract with naviHealth to provide clinicians who participate with the interdisciplinary team regarding treatment decisions. These decisions range from the type of care received, to the most appropriate level of Post-Acute Care

3

setting for each BPCI Beneficiary in the hospital, to monitoring the functional capacity gains by BPCI Beneficiaries in the PAC and influencing decisions regarding the BPCI Beneficiary's treatment in the PAC, and discharge to home. Certain Medicare Advantage Health Plans ("Health Plans") have delegated to naviHealth responsibility for their members ("Health Plan Members") with respect to authorizing physician treatment orders regarding transitions to PAC settings, extensions of PAC stays, or discharges from a PAC.

The Named Plaintiffs and Settlement Class Members perform utilization review and/or care management work ("Care Management Work"). In performing their Care Management Work, Settlement Class Members use naviHealth's proprietary patient assessment tools and decision support technology.

Plaintiffs contend that Defendant uses combinations of the same labels – "Coordinator," "Care Coordinator," "Care Manager," and "Case Manger" – interchangeably to refer to the positions held by the Settlement Class Members, who are all care management employees ("CMEs"). (Dkt. 45). Plaintiffs assert that the primary job duties of CMEs include communicating with and gathering data from members to document members' medical circumstances in Defendant's computer system; inputting member data into Defendant's computer system; using established guidelines to maximize utilization of plan resources through application of predetermined criteria; providing information to members and providers regarding plan benefits and resources to address members' healthcare needs; and working with members and providers to schedule medical care. *Id.* Plaintiffs assert that the CMEs do not fall under any exemption to state or federal overtime laws. *Id.* Plaintiffs assert that they regularly work in excess of 40 hours a week and are not paid any overtime pay for hours in excess of 40. Plaintiffs assert that Defendant knew or should have known that they were performing overtime work and

4

that Defendant's failure to pay them for the work constitutes a willful and bad faith violation of the FLSA and PWMA.

Defendant denies Plaintiffs' allegations and contends that the Plaintiffs and all of the Settlement Class Members are properly classified as exempt from overtime under all applicable state and federal laws.

III.   **COURSE OF LITIGATION**

Plaintiffs have vigorously pursued their claims as well as the claims of the class. Exh. 3, Elkin Dec., ¶13. The Court held an initial case management conference on April 8, 2019 (Dkt. 25), and thereafter issued a scheduling order setting a deadline for Plaintiffs to file an amended complaint (pursuant to their agreement with Defendant) to include CMEs who had originally filed a lawsuit on January 8, 2019 in the District of New Jersey in the case *Fetterolf, et al. v. naviHealth, Inc*. 1:19-cv-238 in which the CMEs alleged the same claims. The Court also set May 15, 2019, as the deadline for Plaintiffs to file a Motion for Conditional Certification.. *Id.*

Plaintiffs timely filed their amended complaint and their Motion for Notice and Conditional Certification (Dkt. 45) and Defendant submitted its opposition to that motion on June 14, 2019 (Dkt. 68) to which Plaintiffs replied on June 24, 2019. (Dkt. 71). During this same time frame, Defendant moved to dismiss the state law class claims in Plaintiffs' amended complaint. (Dkt. 41). In response, Plaintiffs sought leave to file a second amended complaint to address Defendant's concerns (Dkt. 63),[1] which the Court granted on September 16, 2019 (Dkt. 74).

---

[1] Specifically, Plaintiffs sought leave to amend their complaint to remove their North Carolina Wage and Hour Act class claims because those state law claims are preempted by the FLSA under North Carolina Law. Plaintiffs also sought leave to amend their complaint to refine the class definitions. Prior to mediation, Plaintiffs agreed to dismiss Anita Taboh and her attendant class claims brought pursuant to the New York Minimum Wage Act, Labor Law 650, et seq., because Ms. Taboh had not worked for naviHealth during the recovery period. The Parties jointly dismissed Anita Taboh on April 29, 2020

5

Plaintiffs filed the operative complaint that same day (Dkt. 75), to which Defendant filed its third motion to dismiss in this action (Dkt. 77). Defendant's motion to dismiss and Plaintiffs' motion for Notice were pending at the time the Parties reached a settlement. Pursuant to the Settlement Agreement, Defendant agrees to certification of the FLSA collective action for settlement purposes only.

While Plaintiffs' Motion for Notice and Conditional Certification was pending before the Court, naviHealth implemented an arbitration program that purports to impact the rights of potential participants in this case. Defendant sought permission to file a sur-reply to the motion in which it argues that any employee who signed the Arbitration Agreement should be excluded from receiving Notice of the lawsuit. (Dkt. 76). Plaintiffs were poised to file an opposition to Defendant's motion to file a sur-reply when the Parties agreed to mediation.

On October 29, 2019, the Court granted the Parties' motion to stay proceedings pending global mediation based on the Parties' agreement to mediate the FLSA and state law claims on a global basis for the group of 1,191 Care Management Employees. (Dkt. 84). As set forth in detail below, the Parties entered negotiations, attended mediation, and finalized and signed a settlement agreement that will resolve the wage and hour claims of the Named Plaintiffs, Current Opt-in Plaintiffs, all FLSA Putative Class Members who opt into the settlement, and all Rule 23 Class Members who do not opt out. The Parties seek preliminary approval of the settlement which includes certification of the State Law Class as a settlement class.

---

(Dkt. 88). Accordingly, the settlement covers the remaining claims under the FLSA and Pennsylvania state law.

## IV.    <u>NEGOTIATED SETTLEMENT</u>

With the number of different job titles at issue, the Parties began their principled and arms-length negotiations by exchanging information about their understanding of the nature of the work performed by the potential class members. Elkin Decl. at ¶14 . Defendant provided Plaintiffs with the job descriptions for the positions represented by each of the individuals who had joined the case as well as information about other positions. *Id*.

After the Parties agreed on the scope of the class to include all CMEs as defined in Plaintiffs' Complaint, including for settlement purposes only, all CMEs who signed the Defendant's Arbitration Agreements and Severance Agreements, they engaged in an exchange of information to calculate the damages. Elkin Decl. ¶ 15. This included gathering and reviewing detailed payroll records for the Settlement Class Members. *Id.* Defendant provided this information to Plaintiffs, and both sides created damage models to be used at mediation. *Id.* Plaintiffs shared their damage model with Defendant prior to mediation. *Id.* In addition, prior to mediation, the Parties exchanged detailed, extensive mediation statements (90 single-spaced pages between them, exclusive of exhibits). *Id.*

With respect to the data used to calculate damages, on February 12, 2020, Defendant provided Plaintiffs with data for all Settlement Class Members. Elkin Decl. ¶ 16. This data included unique employee identification numbers for each Settlement Class Member, bi-weekly pay, leave hours taken, and premium payments made. *Id.* The data also included the number of Settlement Class Members who signed Arbitration Agreements. The data covered the time period going back three years from the date the original complaint was filed and up through December 12, 2020. The data also identified the state in which each employee worked, which allowed the Parties to negotiate the State Law Class claim separately from the FLSA claim. *Id.*

On March 12, 2020, the Parties mediated the case in Atlanta, Georgia with the assistance of Hunter Hughes, III. Elkin Decl. ¶ 17. Mr. Hughes is an accomplished mediator, and over the last 20 years has been one of a handful of mediators to concentrate on wage and hour litigation. *Id.* While the in-person mediation ended without an agreement, on March 23, 2020, both sides accepted the mediator's proposal resulting in the settlement of this litigation in the maximum gross amount of $4,690,000.00, and as set forth in the negotiated Agreement.

V.   **SUMMARY OF PROPOSED SETTLEMENT**

The proposed monetary settlement shall not exceed the Gross Settlement Amount of $4,690,000.00, as detailed in the attached Agreement, Exh. 1, ¶ 11.4. Plaintiffs' counsel intends to request a fee not to exceed $1,563,332.12 plus costs not to exceed $15,751.13, to be drawn from the Gross Settlement Amount. *Id.* at ¶¶ 12.2, 12.4. The cost of administration for a third-party Administrator will not exceed $35,000.00, also to be drawn from the Gross Settlement Amount. *Id.* at ¶ 12.3. Additionally, Plaintiffs will request approval of a service payment of $10,000 for the Lead Named Plaintiff, and $7,000.00 for the three remaining Named Plaintiffs for a total of $31,000.00, also to be drawn from the Gross Settlement Amount. *Id.* at ¶ 12.5.

Before final approval of the settlement, the 1,023 FLSA Putative Class Members, Named Plaintiffs, and Current Opt-Ins, and the 168 Rule 23 Class Members will be sent a class appropriate Notice outlining the terms of the settlement (Exhibit B and Exhibit D to Agreement). The FLSA Putative Class Members will be provided an Opt-in Form (Exhibit C to the Agreement) and the Rule 23 Class Members will receive a Rule 23 Claim Form (Exhibit E to the Agreement) to return to receive their share of the Gross Settlement Amount. To effectuate the best notice practicable, the notices will be sent by first class mail and by electronic mail, and the

Opt-In Form and the Rule 23 Claim form may be returned to the third-party Administrator by mail, email, or through a web-based signature.

As described more fully below in part VI.D, the Rule 23 Notice contains instructions about how individuals in the Pennsylvania Class can object to or exclude themselves from the settlement. (Exhibit D to Agreement). The FLSA Notice explains rights under the FLSA and the option to opt into the lawsuit using the provided form. (Exhibit B to the Agreement). Both notices set forth the release language contained in the Settlement Agreement should an FLSA Putative Class Member opt into the settlement and should a Rule 23 Class Member not opt out.

## VI.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

In this action, Defendant has agreed to pay a substantial sum to the Settlement Class Members notwithstanding the considerable risks the Named Plaintiffs, Opt-in Plaintiffs, and Settlement Class Members face in continued litigation. Class Counsel believe, based on their calculations, that the Net Settlement Fund *after* the payment of attorneys' fees, litigation expenses, administration costs, and service payments provides significant relief to the Settlement Class Members. Class Counsel believe this is a fair, reasonable, and adequate result. Ex. 3, Elkin Decl., ¶ 24; *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[2]

---

[2]    *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages,

9

After the attorneys' fees, litigation expenses, and service awards are deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Named Plaintiffs, the FLSA Opt-In Plaintiffs, and Rule 23 Class Members who timely make a claim. Taking into consideration the risk of not obtaining collective action certification, the risk of not obtaining Rule 23 class action certification, later decertification if certification is granted, the Court's potential enforcement of Arbitration Agreements and/or Severance Agreements to bar up to 70% of Settlement Class Members from participating in this action, litigation risk with respect to Defendant's exemption defenses, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, risks related to proving that Plaintiffs were suffered or permitted to work overtime given the remote nature of most Plaintiffs' work, the well-established rate at which overtime backpay is calculated in exemption cases in Pennsylvania (i.e., at 1.5 times the regular rate of pay) and, conversely, the rate at which overtime pay is presumptively calculated outside of Pennsylvania (i.e., at 0.5 times the regular rate of pay), up to $1,533,062.73 of the Net Settlement Fund will be allocated to the FLSA claims (the "FLSA Settlement Fund") and up to $1,511,854.14 of the Net Settlement Fund will be allocated to the Rule 23 Class Members ("the Rule 23 Settlement Fund"). The minimum payment to any FLSA Opt-In Plaintiff and/or Rule 23 Class Member who timely submits a claim form will be $100.00.

The portions of the FLSA Settlement Fund allocated to the Named and Current Opt-in Plaintiffs and to those FLSA Putative Class Members who timely opt into the lawsuit, as calculated by Class Counsel in the manner described below and as provided to Defendant's counsel on March

---

and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

31, 2020 (the "Settlement Distribution Data") will be distributed to such individuals. These amounts were calculated based on each individual's pro-rated amount of backpay computed at 0.5 times the regular rate of pay. The regular rate was calculated for each employee for each workweek based on the data included in Defendant's payroll records, including each individual's bi-weekly salary, the total number of weeks that each FLSA Opt-In Plaintiff worked in the relevant recovery period (as set forth below), the number of days worked each week based on paid time off data, and Named Plaintiffs' and Current Opt-In Plaintiffs' estimates of the average amount of unpaid overtime worked which, to achieve settlement, was discounted to account for the substantial litigation risk Plaintiffs faced absent settlement.

Based on the strength of licensed practical nurses' claims as compared to the rest of the collective action members (LPNs are presumptively non-exempt under 29 C.F.R. § 541.301(2)), the 27 Named, Opt-in and FLSA Putative Class Members who were employed as LPNs will receive twice their pro-rated amount prior to distribution to the non-LPNs in an amount set forth in the Settlement Distribution Data. Because of the small number of LPNs (less than 3% of all FLSA Putative Class Members), the effect on the amounts allocated to the remaining FLSA Putative Class Members is minimal.

The recovery period used for calculation of settlement payments extends three years back from the FLSA Plaintiff's opt-in date, or April 12, 2019, the date that the First Amended Complaint was filed, whichever is earlier, and extends up through December 12, 2019, the last date of the data provided by Defendant to Plaintiffs to calculate damages for mediation. Fifty percent (50%) of each FLSA award will constitute backpay, and fifty percent (50%) will constitute liquidated damages.

11

Only those FLSA Putative Class members who timely submit an Opt-In Form will be paid an award from the Qualified Settlement Fund established by the third-party Administrator and funded by the Defendant.[3] Only those FLSA Plaintiffs who timely opt into the settlement will release their state and federal wage and hour claims against the defendant pursuant to Paragraphs 1.13 and 16.2 of Exhibit 1.

The portions of the Rule 23 Settlement Fund allocated to the Rule 23 Class Members who do not opt out of the settlement and file a claim after receiving the notice of settlement (Exhibit D), will be distributed to such individuals in the amount calculated by Class Counsel in the manner described below as set forth in the Settlement Distribution Data. The Rule 23 Class Members' settlement payments will be based on their pro-rated amount of backpay computed at 1.5 times the regular rate of pay pursuant to Pennsylvania state law. *Chevalier v. General Nutrition Centers, Inc.*, 2014 Pa. Dist. & Cty., Dec. LEXIS 145 (Ct. of Common Pleas Oct. 20. 2014), (affirmed as to time-and-one-half calculation for hours above 40 at *Chevalier v. Gen. Nutrition Centers, Inc.*, 2019 Pa. LEXIS 6521 (Sup. Ct. Pa. Nov. 20, 2019). Like the FLSA LPNs, the 8 State Law Class LPNs will receive twice their pro-rated amount prior to distribution to the non-LPNs.

The recovery period used for calculation of the settlement payments for the Rule 23 Class Members' claims extends three years back from April 12, 2019, the date that the First Amended Complaint was filed, and extends through December 12, 2019, the last date of the data provided by Defendant to Plaintiffs' Counsel in advance of mediation. Fifty percent (50%) of each Rule 23 Class Member's award will constitute backpay, and fifty percent (50%) will constitute liquidated damages.

---

[3] The Named Plaintiffs and Current Opt-In Plaintiffs need not submit an Opt-In Form to receive their allocation of the Net Settlement fund.

Only those Rule 23 Class Members who timely submit a Rule 23 Claim Form will be paid an award from the Rule 23 Settlement Fund. Rule 23 Class Members who do not opt out from the settlement will release all state and federal wage and hour claims against Defendant in accordance with Paragraph 1.13 and 16.2 of the Settlement Agreement.

After accounting for Class Counsel's projected litigation expenses and fees, the third-party Administrator's costs, and service payments to the four Named Plaintiffs, the average settlement payment for FLSA Putative Class Members who timely opt into the action is $1,498.60 and the maximum payment is $7,858.63. Elkin Decl. ¶ 23. After deducting fees, expenses and administration costs, the average settlement payment to Rule 23 Class Members is $8,999.13 and the maximum award is $28,185.17. *Id.* These amounts are reasonable and adequate given the defenses that Defendant has raised.

In addition, the distribution of the Settlement Class Fund is fair, as all Settlement Class Members will share in the Fund on a *pro rata* basis based on their actual bi-weekly pay and the estimated overtime hours. For purposes of calculating damages the Plaintiffs estimated 10 hours of overtime each week and then reduced that amount to account for litigation risk. This fair result supports preliminary approval.

## A. Legal Standards for Settlement Approval

The law and federal policy strongly favor the settlement of class action litigation. *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988) *aff'd sub nom Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions"). *See,*

13

*e.g., Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986).

Court approval is required to settle both an FLSA collective action and a Rule 23 class action. *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) [hereinafter UAW] Fed. R. Civ. P. 23(e). "Before approving a settlement, a district court must conclude that it is fair, reasonable and adequate." UAW at 631; *see also* Fed. R. Civ. P. 23(e)(2); *UAW*, 497 F.3d at 631 ("Before approving a [ Rule 23] settlement, the district court must conclude that it is 'fair, reasonable, and adequate.'").

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54, 1353 n.8 (11th Cir. 1982)). As discussed in Parts II., III., and IV, *infra*, the instant settlement was the result of contested litigation and arm's length negotiation.

## B. The Rule 23 Settlement and the FLSA Settlement Are Fair, Reasonable, and Adequate

"Given that class settlements are favored, the role of the district court is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned.'" *IUE-CWA*, 238 F.R.D. at 594 (citations omitted); *Clark Equip. Co.*, 803 F.2d at 880 (same).

The district court is to assess the settlement with regard to a "range of reasonableness," which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE-CWA*, 238 F.R.D. at 594 (citations

14

omitted). The district court is to consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* ("*Cardizem*"), 218 F.R.D. 508, 522 (E.D. Mich., 2003). In assessing a proposed settlement, the district court judge "may not 'substitute his or her judgment for that of the litigants and their counsel'" and "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA,* 238 F.R.D. at 593, 594 (citations omitted).

The Sixth Circuit has identified seven factors that guide the inquiry undertaken by the district court in assessing whether a proposed settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion [i.e. whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining]; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *UAW*, 497 F.3d at 631 (*citing Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983)); *IUE-CWA*, 238 F.R.D. at 594 (also including as a factor "whether the settlement is fair to the unnamed class members"); *Cardizem*, 218 F.R.D. at 522. The district court is to address "whether the interests for the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Cardizem*, 218 F.R.D. at 522 (citation omitted). In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595. These factors should also be applied in FLSA cases. *See West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 U.S. Dist. LEXIS 104269, at *2 (M.D. Tenn. July 5, 2017) (applying factors to FLSA case); *Steele v. Staffmark Invs., Ltd. Liab.*

15

*Co.*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (noting that the Sixth Circuit has never ruled on the issue but finding that "that FLSA settlements require approval by either the Department of Labor or a court"); *Applegate-Walton v. Olan Mills, Inc.*, 2010 U.S. Dist. LEXIS 77965, at *5 (M.D. Tenn. Aug. 2, 2010) (applying *UAW* factors and acknowledging approval under *Lynn's Food Stores, Inc. v. United States of America*, 679 F.2d 1350 (11th Cir. 1982) (requiring court approval for FLSA settlement)).

### 1. The Settlement is the Product of Arm's Length Negotiations (Factor 1)

Settlement negotiations in this matter have been lengthy and were conducted at arm's length. Settlement discussions between the Parties began in September 2019 and continued with the exchange of necessary information to calculate damages on a collective and class-wide basis, followed by the exchange of mediation statements, and damages models and an in-person March 12, 2020 mediation. Even then, no agreement could be reached until more than a week after the mediation. Elkin Decl.¶ 20.

The Parties' negotiations were principled, with each side basing their offers and counteroffers on naviHealth's own pay data for all 1,191 Settlement Class Members, the Parties' respective assessments of the law and facts, and the Parties' individual assessment of litigation risks. Elkin Decl., ¶ 17. Both sides attended the mediation with full authorization to approve a settlement agreement, with Named Plaintiffs Mae Barbee, Donna Trone, Sheree Montgomery, and Mary Beth Herwald available via telephone, and with Defendant's lawyers and in-house counsel participating in person on behalf of Defendant *Id. at* ¶ 18.

After nearly 8 hours of mediation, the Parties adjourned without a settlement agreement, but decided that Mr. Hughes would continue to facilitate the settlement discussions and provide the Parties with a mediator's proposal containing the principal terms of the settlement agreement,

which both sides accepted on March 23, 2020. Elkin Decl., ¶19.  Accordingly, the principled, arm's-length negotiations support preliminary approval of the settlement.

> **2.  While Plaintiffs Believe Their Position is Strong, Continued Litigation Through Trial and Appeal Would be Complex, Costly, and Protracted (Factors 2 and 4)**

While Plaintiffs believe their legal position is strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010); *See also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.... The prospect of such a massive undertaking clearly counsels in favor of settlement.") (internal quotation marks and citations omitted).

With respect to litigation risk, notably, while this case was stayed to allow the Parties to focus their efforts on settlement, the United States Court of Appeals for the Second Circuit issued a decision concluding that utilization review nurses who reviewed denials of insurance coverage, made determinations of whether the requested services were medically necessary, and approved such claims without a physician's review were exempt from the FLSA.  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122 (2nd Cir 2020).  While Plaintiffs believe that *Isett* was wrongly decided, Plaintiffs recognize that it is a hurdle that they would have to overcome in convincing this Court that the utilization review work in this case is not exempt work. Defendant also made clear to Plaintiffs that it would rely heavily on *Williams v. Genex Services*, LLC, 809 F.3d 103 (4th Cir. 2015) to establish that Plaintiffs are exempt and not entitled to any overtime pay.  In *Genex,* the Fourth Circuit held that "medical case management" work performed by an RN who did not provide hands-on patient care, but who interacted with medical providers and employees to ensure the

17

provision of effective health care services while maximizing cost containment was an exempt professional. The risk of ending up like the *Isett* and *Genex* plaintiffs, *with nothing*, was a driving factor in reaching this settlement, for it meant that even if Plaintiffs won at the trial court level, Defendant would certainly appeal to the Sixth Circuit.

Here, there is no doubt that discovery, litigation, trial and appeals would be long, arduous and complex. Indeed, Defendant has moved to dismiss Plaintiffs' complaint no less than three times. Defendant vigorously opposed Plaintiffs' Motion for Notice and was seeking to file a sur-reply to argue that to the extent that the Court issued Notice, none of the 837 Arbitration Agreement signers should receive Notice because they waived their rights to participate in this litigation. While Plaintiffs believe that the case should have been certified as a collective and Rule 23 class action, no decisions had yet issued regarding certification and it is possible that the Court would have denied both. Absent settlement, if Defendant is successful in opposing certification and/or limiting notice (or later in decertifying the case), the Plaintiffs would be forced to litigate their FLSA and/or state law claims in individual actions, a result that would be time-consuming, expensive, and require individualized inquiries and the participation of all individual plaintiffs. This settlement, on the other hand, makes significant monetary relief available to class members in a prompt and efficient manner.[4]

In light of the above considerations, these factors weigh in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 3)

---

[4] Prompt payment of settlement monies now - during a global pandemic and uncertain economic times- is particularly relevant and likely more valuable than the *prospect* of receiving settlement funds some three to seven (or more) years from now.

While formal discovery other than the exchange of initial disclosures has not begun, as described in part IV *supra*, the Parties engaged in substantial discovery including the collection and exchange of payroll data on a collective and class wide basis. Thus, discovery has advanced far enough to allow the Parties to resolve this dispute responsibly, and thus this factor supports preliminary approval.

### 4. Class Counsel and the Named Plaintiffs Believe Settlement is In the Best Interest of the Class (Factor 5)

The judgment of Class Counsel that the settlement is in the best interest of the Class "is entitled to significant weight and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597. *See also Cardizem*, 218 F.R.D. at 525 ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement."). Here, Class Counsel have weighed the respective risks to proceeding with litigation and have extensively analyzed the Defendant's potential liability based on thorough damages calculations using the Defendants' payroll records. Elkin Decl., ¶ 21. Further, Class Counsel discussed these risks and the Defendant's potential liability with the Named Plaintiffs who are serving as Class Representatives and asked them to consider whether settlement was in the best interest of the class. *Id.* Each class representative was asked to consider that the continued litigation could result in the class receiving a greater monetary judgment or lesser monetary judgment after trial and appeal, and each class representative determined that certainty of settlement outweighs the risks and costs of going forward. *Id.*

In light of this analysis, Class Counsel and the class representatives believe that settlement is in the best interest of the class.

### 5. The Reaction of Absent Class Members Weighs in Favor of Preliminary Approval (Factor 6)

19

Notice of the settlement has not yet been issued to the class, and an assessment of the Class's reaction is premature. However, this factor weighs in favor of preliminary approval as, without such approval, absent class members will not even be given the opportunity to assess and provide their opinions on the settlement terms.

### 6. The Public Interest Weighs in Favor of Preliminary Approval (Factor 7)

The resolution of this litigation will, among other things, (i) provide backpay and liquidated damages to all FLSA Putative Class Members who timely complete an FLSA Opt-In Form; (ii) provide backpay and liquidated damages to all State Law Class Members who timely complete a Claim Form; (iii) ensure certainty for all concerned without more delay; and (iv) obviate the need for years of litigation, all of which are consistent with the public interest. *See Cardizem*, 218 F.R.D. at 520 ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").

Based on the foregoing, all of the *Moulton* factors weigh in favor of preliminary approval of the settlement.

### C. The Notices are the Best Notice Practicable and Approval is Warranted

Before conducting a final fairness hearing, the district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1). The notice should be "reasonably calculated, under all the circumstances, to apprise [the Class Members] of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 631 (citing, *inter alia, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

20

Here, the attached notices, one for the FLSA Putative Class Members and one for the Rule 23 Class Members are the best practicable notice as these notices are reasonably calculated to apprise the Settlement Class Members of the pending settlement and afford them an opportunity to present their objections, file a Rule 23 Claim Form or FLSA Opt-in Form, as appropriate, or for Rule 23 Class Members, to exclude themselves.

The notices (Exhibits B and D to Settlement Agreement) provide each Settlement Class Member with his or her amount of damages should they choose to participate; explain how to participate; explain how the maximum gross settlement amount of $4,690,000.00 will be allocated; set forth the amount of attorneys' fees and expenses; set forth the amount of service awards; describe the costs associated with the third-party administrator; explain the allocation between the FLSA Settlement Fund and Rule 23 Settlement Fund; notify the class of the fairness hearing; and set forth the release language of the Settlement Agreement.

Importantly, the notices will be mailed by first class mail after the third-party Administrator runs a NCOA (National Change of Address) check on the addresses provided by the Defendant. The notices will also be emailed. The Settlement Class Members may return their claim forms by mail, email or via web-based submission and signature, thus making participation by class and collective action members simple, straightforward, and safe in these uncertain times because class members will not have to leave their homes to mail in claim forms to receive their share of the settlement monies.

### D. Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

Plaintiffs request preliminary approval of thirty-three and 1/3 percent of the common fund as an attorney fee. Counsel places this request herein with the understanding that the Court may

21

wish to reserve ruling on the issue of fees until a final fairness hearing after class members have an opportunity to respond.

        **1.**      **The Court Should Award Attorneys' Fees from a Percentage of the Fund**.

The Court should award attorneys' fees as a percentage of the total fund made available to the Settlement Class Members. "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court must ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts have broad discretion in determining an award of attorney's fees in class actions. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996); *Rawlings*, 9 F.3d at 516. Class Counsel created a benefit for the Settlement Class and are entitled to recover reasonable attorneys' fees. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Stanley v. U.S. Steel Co.*, 2009 U.S. Dist. LEXIS 114065, at *4 (E.D. Mich. Dec. 8, 2009) ("[W]here counsel's efforts create a substantial common fund for the benefit of [ ]a class, they are entitled to payment from the fund based on a percentage of that fund.").

The trend in the Sixth Circuit is "toward adoption of a percentage of the fund method" in common fund cases. *Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Se. Milk Antitrust Litig.),* No. 2:08-MD-1000, 2018 U.S. Dist. LEXIS 131855, at *12-13 (E.D. Tenn. July 11, 2018) (quoting *Rawlings*, 9 F.3d at 515). *See, e.g., Burcham v. Taubra Corp.*, 2018 WL 3840827, at *2 (approving request for fees and costs in the amount of 37.5% of settlement fund); *Kritzer v. Safelite Solutions*, LLC, 2012 WL 1945144 (S.D. Ohio May 30, 2012) (approving attorneys' fees and costs

22

up to 52% of total recovery for hybrid FLSA collective and Ohio class action for unpaid overtime); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in hybrid FLSA and Ohio and North Carolina state classes); *Worthington v. CDW Corp.*, 2006 U.S. Dist. LEXIS 32100, at *22 (S.D. Ohio May 22, 2006) ("[C]ounsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range."); *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit.").

. The advantages of the percentage of the fund method are that: "it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). "In practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation." MCL § 14.121. At least one circuit court of appeals has recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Sweetwater*, 2018 U.S. Dist. LEXIS 131855 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

The percentage of the fund method prevents "inequity by assessing attorneys' fees against the entire fund," and "decreases the burden imposed on the [c]ourt by eliminating a full-blown, detailed and time-consuming lodestar analysis." *Stanley v. U.S. Steel Co.*, 2009 U.S. Dist. LEXIS 114065, at *4-5 (E.D. Mich. Dec. 8, 2009); *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d 752,

762 (S.D. Ohio 2007) ("[T]he [c]ourt [is] spared from the costly task of scrutinizing counsel's billable hours"). The percentage of the fund method is also advantageous because it "establish[es] reasonable expectations on the part of class counsel as to their expected recovery and encourag[es] early settlement before substantial fees and expenses have accumulated." *Rotuna v. West Customer Mgm't Group, LLC*, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010). In addition, the percentage of the fund approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516.

In this case, a substantial common fund has been established for the benefit of class members through the efforts of Class Counsel. Given the commitment of time and resources committed by Class Counsel and the complexity of this litigation, it simply would not have been practicable for individual members of this class to pursue litigation challenging the alleged illegal conduct in this case. Given the clear trend in the Sixth Circuit, the percentage-of-the-fund method is appropriate here.

### E. The Service Awards Should be Approved

The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811, n.7 (2018). In the employment context, the Sixth Circuit has specifically recognized the importance of rewarding employees who protest unlawful employment practices and seek to secure rights for other victimized employees. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protest and help to bring rights to a group of employees who have been the victims of [unlawful employment practices]"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (Service awards "are particularly appropriate in the employment context" given the risk "of

24

adverse actions by the employer or co-workers.").  It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit. But for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *21 (S.D. Ohio Nov. 25, 2019) ("A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real."). "

In light of this view by the Plaintiffs, the Parties agreed to allot a portion of the Gross Settlement Amount as service payments to the four Named Plaintiffs in the total amount of $31,000.00 with $10,000.00 to the Lead Named Plaintiff, and $7,000.00 to each of the three Named Plaintiffs.  This amount reflects less than one percent of the maximum gross settlement fund. *See e.g., Brandenburg,* at *24 (S.D. Ohio Nov. 25, 2019) (approving a service award of $10,000 for named plaintiff from a $1,140,000 settlement fund); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *17 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award to named plaintiff from a $850,000 settlement fund because "Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award. Plaintiff's efforts furthered the important public policies underlying the Fair Labor Standards Act."); *Salinas v. United States Xpress Enters.*, Inc., No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (E.D. Tenn. Mar. 8, 2018) (approving a service award of $10,000 for named plaintiff from a $2,200,000 settlement fund); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, No. 2:97-cv-750, 2016 U.S. Dist. LEXIS 128819, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of

25

$25,000 from a \$3 million settlement); *Davidson v. Henkel Corp.*, No. 12 Civ. 14103, 2015 U.S. Dist. LEXIS 195088, 2015 WL 13034891, at \*3 (E.D. Mich. Dec. 8, 2015) (approving \$15,000 service award for the named plaintiff from a \$3,350,000 settlement fund).

Importantly, the service awards set forth in the Agreement are within the range awarded by district courts in this Circuit. *See e.g.*, *Abadeer v. Tyson*, 3:09-cv-00125, DE 420 (M.D. Tenn. October 17, 2014) (approving service awards ranging from \$500 to \$11,500 for participating plaintiffs) (citing to Exhibit 2 of Settlement Agreement, DE 411.1 at 57); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of \$10,000 to each of the class representatives in FLSA/Rule 23 hybrid); *Johnson v. Midwest Logistics Sys.*, 2013 WL 2295880, at \*5 (S.D. Ohio May 24, 2013) ("[A]lthough there is a substantial incentive award of \$12,500 to the named plaintiff in this case, relief to unnamed class members is not perfunctory" where class members will receive either \$260 or \$1,000 each and "[t]he Court therefore finds that the incentive award does not undermine the fairness of the settlement."). Other district courts have approved similar service awards.[5] Indeed,

---

[5]    *See e.g., Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) (approving \$20,000 service awards to each of the seven named plaintiffs for "informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession; reviewing defendants' document production; appearing for depositions; responding to defendants' discovery requests; assisting counsel to prepare for mediation and settlement discussions; and reviewing and commenting on the terms of the settlement"); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969 (E.D.N.Y. May 12, 2016) (awarding service payments between \$2,000 and \$10,000 to participating plaintiffs); *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) (approving \$15,000 service award to named plaintiff); *Kress v. Pricewaterhouse Coopers LLP*, 2016 U.S. Dist. LEXIS 119307 (E.D. Cal. Sept. 1, 2016) (approving service awards between \$5,000 and \$10,000 to participating plaintiffs in an FLSA action); *Irvine v. Destination Wild Dunes Mgmt.*, 2016 U.S. Dist. LEXIS 116128 (D.S.C. Aug. 30, 2016) (approving service awards and noting that opt-in plaintiffs "benefitted substantially from the efforts of" named and participating plaintiffs and that "[w]ithout their actions, this settlement may not have been achieved"); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 U.S. Dist. LEXIS 152087 (W.D. Wis. Oct. 23, 2013) (approving service payments between \$5,000 and \$15,000 to named and participating plaintiffs in FLSA/Rule 23

26

the service awards represent a very small percentage of the settlement fund that is well within the range customarily awarded in similar cases. *Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. Mar. 24, 2016) (service awards representing 5% of the settlement fund, is "well within the range of service awards recently approved" in FLSA cases).

In this case, the Named Plaintiffs contributed a significant amount of time and effort to bring these claims on behalf of the class, at great risk to themselves. For example, the four Named Plaintiffs participated in lengthy interviews and expended a significant amount of effort collecting documents to help counsel gather facts for the Complaint, First Amended Complaint and Second Amended Complaint. Elkin Decl. ¶25; Dkts. 1, 31, 75. Additionally, the four Named Plaintiffs spent significant time and effort helping counsel contact other Opt-In Plaintiffs to gather facts to prepare the Plaintiffs' Motions for Conditional Certification. (Dkts. 17, 44). All four Named Plaintiffs participated in mediation (remotely). Elkin Decl. ¶ 25. Finally, Lead Named Plaintiff Mae Barbee was instrumental in settlement discussions, helping counsel to understand the intricacies of CMEs' job duties and naviHealth's pay practices, so that counsel could zealously

---

hybrid); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (approving $10,000 service awards to named plaintiffs in FLSA/Rule 23 hybrid); *Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) (approving service payments of $15,000 to named plaintiffs, $12,000 to participating plaintiffs, and $4,000 to an FLSA-opt in plaintiff in FLSA/Rule 23 hybrid); *Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) (approving services awards of $10,000 to named plaintiffs and $5,000 to opt-in plaintiffs in FLSA Rule/23 hybrid); *Lovaglio v. W & E Hospitality, Inc.*, 2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 5, 2012) (approving service awards of $10,000 to named plaintiffs in FLSA/Rule 23 Hybrid); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (awarding service payments ranging from ranging from $7,000 to $30,000 in FLSA/Rule 23 hybrid); *Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2nd Cir. 2013) (finding service awards of $15,000 to each of 15 named plaintiffs reasonable); *Camp v. Progressive Corp.*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (approving award of $10,000 to named plaintiff and awards of $1,000 to $2,500 to other FLSA collective action members who assisted in the litigation).

27

negotiate during mediation. *Id*. Because the Named Plaintiffs have expended time and energy in advancing and resolving the claims of the class at great risk to future employment opportunities, they deserve the service awards contemplated in the settlement agreement.

### VII.   A Collective Action Pursuant to 29 U.S.C. § 216 (b) Should Be Conditionally Certified for Settlement Purposes

The Settlement Agreement contemplates the lawsuit may be certified as a collective action pursuant to 29 U.S.C. §216(b) for settlement purposes only.  Exhibit 1 at ¶ 5.1.  For the reasons set forth in part VIII below, and for the reasons set forth in Plaintiffs' pending motion for notice and conditional certification (Dkt. 45), the Court should certify the collective for purposes of settlement only. Plaintiffs assert that they stand similarly situated to other salaried CMEs whose job duties included Care Management Work and were, together, subjected to naviHealth's alleged Overtime Misclassification Policy. "To establish that employees are similarly situated, a Plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions." *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 267 (6th Cir. 2015) ("[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.") (quoting *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009)); *Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla.1994).  Plaintiffs need only show that their positions are similar, not identical, to the putative class members. "[T]he class members need not have identical positions with identical titles, functions, or pay, **they just need[] to perform the same general job**." *Watson v. Advanced Distrib. Servs., LLC,* 298 F.R.D. 558, 561 (M.D. Tenn. 2014) ("The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members.").  For the reasons set forth in Plaintiffs' Motion for Notice, and in accordance with the Parties' Settlement Agreement, the Parties respectfully request

28

the Court to conditionally certify the collective action for settlement purposes only.

**VIII.  A Class Action Pursuant to Rule 23 (e) Should
Be Certified for Settlement Purposes**

The Agreement requires the Parties to apply to the Court for the certification of the Pennsylvania State Law Class for settlement purposes only. Exhibit 1 at ¶ 5.1. Certification of a Settlement Class is appropriate here as it meets all of the requirements of Fed. R. Civ. P. 23.

The threshold consideration for approval of any class settlement is whether the class can be certified. *See In re Polyurethane Foam Antitrust Litig.*, 2012 U.S. Dist. LEXIS 192151, at *10 (N.D. Ohio Jan. 23, 2012) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). Here, the Parties have agreed that the case should be certified for settlement under Fed. R. Civ. P. 23.   Exh. 1 at ¶ 5.1. Plaintiffs assert that as demonstrated below, with respect to the State Law Class, the elements of Fed. R. Civ. P. 23(a) and (b)(3), numerosity, commonality, typicality, adequacy, predominance, and superiority, are satisfied.   Under the standards set forth in *Amchem Products v. Windsor*, 521 U.S. 591, 619 (1997), manageability concerns that would be relevant if a case were to be tried do not prevent certification of a Settlement Class.

**1.  Federal Rule of Civil Procedure 23(a):**

Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23. "The modern trend for meeting the numerosity factor is to require at a minimum between 21 and 40 class members." *Allard v. SCI Direct, Inc.*, No. 16-cv-01033, 2017 U.S. Dist. LEXIS 120093, at *6 (M.D. Tenn. July 31, 2017) (internal quotations omitted). Here, the potential State Law Class consists of 168 individuals specifically identified by a coded listing.  Numerosity is satisfied.

<u>Commonality</u> requires that there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23. Commonality is satisfied here for settlement purposes. Plaintiffs assert that the Rule 23 State Law Settlement Class is comprised of similar individuals who performed Case Management Work in Pennsylvania and were classified as exempt from the PMWA. Defendant classified all Settlement Class Members as exempt from the overtime provisions of federal and state law. The Named Plaintiff State Law Class Representative, Mary Beth Herwald, claims that Defendant had a common policy or practice of failing to pay these individuals overtime pay at one and one-half times their regular rates of pay when they worked more than 40 hours per week, despite their performance of non-exempt duties. Plaintiffs assert that this is sufficient to establish commonality. *See e.g., Fenley v. Wood Grp. Mustang, Inc*., 325 F.R.D. 232, 250 (S.D. Ohio 2018) (finding commonality because the case revolved around whether the employer properly paid plaintiffs under the FLSA and state wage and hour laws).

<u>Typicality</u> requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23. At issue is whether the Named Plaintiff and all other State Law Class Members were properly classified as exempt from the overtime provisions of the FLSA and PMWA, and whether they were required to work in excess of forty (40) hours per week. Plaintiffs assert that this is sufficient to meet the requirement of typicality. *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 852 (6th Cir. 2013) ("This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members.").

<u>Adequacy of Representation</u> requires that the Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. Here, Plaintiff Mary Beth

30

Herwald has demonstrated that she does not have any interests that are antagonistic to the Class and that she has been diligent in fulfilling her duty as Class Representative. Moreover, Class Counsel have extensive experience in class action litigation and are well-versed in the issues surrounding the underlying claims. *See* Exhibit 3, Elkin Decl.; Exhibit 4, Yezbak Decl., Exhibit 5, Hedgepeth Decl., Exhibit 6, Siegel Decl. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 2012 WL 410926, at *8 (6th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Class members must not have "interests that are [] antagonistic to one another." *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *20 (W.D. Tenn. Feb. 13, 2020) (quoting *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 563 (6th Cir. 2007)). The Named Plaintiff has no antagonistic interests that go to the subject matter of the lawsuit. The Named Plaintiff has held the same job position or similar job positions, and was paid in the same manner, as the proposed State Law Class Members.

## 2. Federal Rule of Civil Procedure 23(b)(3):

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The proposed State Law Class meets the standards of predominance and superiority for the purposes of settlement. Plaintiffs assert that common questions of law and fact predominate because the proposed State Law Class is limited to CMEs who claim they were subjected to systemized practices and standardized conduct that violated the Pennsylvania Minimum Wage Act during the recovery period. *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-

31

SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *22-23 (W.D. Tenn. Feb. 13, 2020) ("The Classes' common issues predominate over individual issues. Named Plaintiffs allege that [the employer] engaged in the same course of illegal conduct by misclassifying the members of the Classes as exempt from Ohio and Kentucky overtime laws. The legal issues that are determinative of [employer's] liability are common to the members of the Classes.")

In addition, the fact that the Parties are asking to certify the State Law Class for settlement purposes only weighs in favor of finding that the superiority and predominance elements are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2018 U.S. Dist. LEXIS 225726, at *240 (E.D. Mich. Nov. 6, 2018); *Christie Clinic L.L.C. v. Gen. Reinsurance Corp. (In re Reciprocal of Am. (ROA) Sales Practices Litig.*), No. 1551, 2015 U.S. Dist. LEXIS 177986, at *11 (W.D. Tenn. Jan. 23, 2015). Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (citation omitted). Any manageability concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See e.g.,* <u>*Fitzgerald v. P.L. Mktg.*,</u> No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *21 n.9 (W.D. Tenn. Feb. 13, 2020) (The last of the Rule 23(b)(3) factors – 'the likely difficulties in managing a class action' – is not germane to the class settlement context.").

The element of superiority is met for settlement purposes because the proposed settlement class is the most efficient way to resolve the claims of the Named Plaintiff and State Law Class Members. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual

to bring a solo action prosecuting his or her rights."). In this proceeding, the Parties will be allowed to resolve the claims of 168 persons in one coordinated proceeding, thus conferring significant benefits upon each Rule 23 Class Member.

## VI.    CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, the Parties respectfully request the Court to: (1) preliminarily approve the Settlement Agreement; (2) approve the FLSA settlement notice attached as Exhibit B to the Agreement and the FLSA Opt-in Form attached as Exhibit C to the Agreement; (3) approve the Rule 23 settlement notice attached as Exhibit D to the Agreement and the Rule 23 Claim Form attached as Exhibit E to the Agreement; (4) appoint Rust Consulting as the Settlement Administrator; (5) certify the FLSA collective action pursuant to 29 U.S.C. §216(b) for settlement purposes only; (6) certify the State Law Class for settlement purposes only under Fed. R. Civ. Pro 23(e); (7) appoint Plaintiffs' Counsel as Class Counsel; and (8) set a Final Approval and Fairness Hearing on a date approximately ninety-five (95) days from the date of the Preliminary Approval Order.

MAY 8, 2020

RESPECTFULLY,


/s/Molly A. Elkin
Molly A. Elkin
Hillary D. LeBeau
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
hdl@mselaborlaw.com

33

/s/ Robert W. Horton
Robert W. Horton (TN BPR #17417)
Mary Leigh Pirtle (TN BPR #26659)
Laura M. Mallory (TN BPR #31917)
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Tel.: (615) 742-6200
Fax: (615) 742-2799
bhorton@bassberry.com
mpirtle@bassberry.com
laura.mallory@bassberry.com

*Counsel for Defendant naviHealth, Inc.*

/s/Charles P. Yezbak
Charles P. Yezbak, III
N. Chase Teeples
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

/s/ Jack Siegel
Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
Tel.: (214) 790-4454
jack@siegellawgroup.biz

/s J. Derek Braziel
J. Derek Braziel
Travis Gasper
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel.: (214) 749-1400
Fax: (214) 749-1010
jdbraziel@l-b-law.com
gasper@l-b-law.com

/s/ Travis M. Hedgpeth
Travis M. Hedgpeth
THE HEDGPETH LAW FIRM, PC
5438 Rutherglenn Drive
Houston, Texas 77096
Tel.: (512) 417-5716
travis@hedgpethlaw.com

*Counsel for Plaintiffs and The Settlement Classes*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing has been filed via the

Court's ECF filing system on May 8, 2020 and transmitted to the following counsel of record:

Robert W. Horton
Mary Leigh Pirtle
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-6232
Fax: (615) 742-2806
Email: rhorton@bassberry.com
Email: mpirtle@bassberry.com

/s/ Molly A. Elkin
Molly A. Elkin
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC  20005
Phone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com