# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| **MAE BARBEE, DONNA TRONE, MARY BETH HERWALD, SHEREE MONTGOMERY, and all others similarly situated,** | |
| **Plaintiffs,** | CASE NO. 3:19-cv-00119 |
| **vs.** | Judge Waverly D. Crenshaw |
| **NAVIHEALTH, INC.,** | Magistrate Judge Alistair Newbern |
| **Defendant.** | |

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement" or "Settlement") is made and entered into by and among Plaintiffs Mae Barbee, Donna Trone, and Sheree Montgomery on behalf of themselves and the collective action members they represent under Section 16(b) of the Fair Labor Standards Act ("FLSA"), Mary Beth Herwald on behalf of herself and the class members she represents under Rule 23 of the Federal Rules of Civil Procedure, and Defendant naviHealth, Inc. ("Defendant").

## RECITALS

On September 16, 2019, the Named Plaintiffs (defined below) filed their Second Amended Complaint (Dkt. 75) (the "Complaint") alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"), by failing to pay overtime for all hours worked (the "FLSA Collective Action"). The Complaint also alleged a Rule 23 class action claim that the Defendant violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101-333.115 by failing to pay overtime pay (the "Rule 23 Class Action") (collectively, the "Litigation"). Defendant denies these allegations.

On May 15, 2019, Named Plaintiffs filed a Motion for Conditional Certification and Notice Pursuant to the FLSA. (Dkt. 45). Defendant opposed the motion.

On October 29, 2019, the Court granted the Parties' motion to stay proceedings based on the Parties' agreement to engage in a mediation. In connection with this mediation, counsel for the Parties exchanged information and data, and engaged in good faith negotiations presided over by Hunter Hughes, a highly-regarded mediator with respect to wage and hour claims, on March 12, 2020, in Atlanta, Georgia. While the mediation ended without an agreement, the Parties were able to reach agreement on the broad terms of a settlement on March 23, 2020, when both Parties accepted the mediator's proposal. Since that time the Parties have continued to work to narrow the issues, identify areas of agreement, and have made additional concessions where appropriate leading ultimately to this Agreement.

The Parties and their counsel believe that the interests of all concerned are best served by compromise, settlement, and dismissal of the Litigation with prejudice and have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests without the expense, delay, diversion, and risk of protracted and complex litigation.

1.    **DEFINITIONS**

1.1.    The term "Settlement Class Members" means all persons identified by Defendant, including all such persons and unique employee identification numbers identified in the data produced by Defendant on February 12, 2020, (the "Data") who worked for one or more workweeks as Care Management Employees (as defined in the Complaint) outside of California during the three (3) years prior to either the date that their Opt-in form was filed, or April 12, 2019, the date that the Amended Complaint was filed, whichever is earlier, to December 12, 2019. The Settlement Class Members are comprised of the Named Plaintiffs, Current-Opt In

2

Plaintiffs, FLSA Putative Class Members, and Rule 23 Class Members, each defined below. There are 1,191 Settlement Class Members.

1.2. The term "Named Plaintiffs" means Lead Plaintiff Barbee, and Named Plaintiffs Trone, Montgomery, and Herwald.

1.3. The term "Current Opt-In Plaintiffs" means Settlement Class Members, other than the Named Plaintiffs, who have previously filed consent forms and opted into the FLSA Collective Action as identified in Exhibit A. There are eleven (11) Current Opt-In Plaintiffs listed in **Exhibit A.**

1.4. The term "FLSA Putative Class Members" means all Settlement Class Members, other than the Named Plaintiffs and the Current Opt-In Plaintiffs, who were employed by Defendant outside of Pennsylvania, as indicated in the Data. There are 1012 FLSA Putative Class Members.

1.5. The term "FLSA Opt-In Plaintiffs" means those FLSA Putative Class Members that submit a materially complete and timely Opt-In Form by the Response Deadline as set forth in Paragraph 7.2 of this Agreement.

1.6. The term "Rule 23 Class Members" means Settlement Class Members that were employed by Defendant in Pennsylvania, as indicated in the Data. There are 168 Rule 23 Class Members (inclusive of Named Plaintiff Mary Beth Herwald, and Current Opt-in Plaintiffs Suzanne Lochie, Elizabeth Maddalo, and Amy Miller).

1.7. The term "Parties" means the Named Plaintiffs, the Current Opt-In Plaintiffs, and Defendant.

1.8. The term "Class Counsel" means the undersigned Plaintiffs' lawyers.

3

1.9.    The term "Claimant" means: 1) a Rule 23 Class Member who submits a materially complete and timely Rule 23 Claim Form by the Response Deadline (defined in Paragraph 7.1), and who does not "opt out" of the Settlement as set forth more fully below ("Rule 23 Class Member Claimant"); 2) an FLSA Opt-In Plaintiff; 3) a Named Plaintiff, and 4) a Current Opt-In Plaintiff.

1.10.    The "Maximum Settlement Amount" is Four Million Six Hundred and Ninety Thousand Dollars and Zero Cents ($4,690,000), which is the maximum total amount Defendant shall potentially be required to pay under the terms of this Settlement Agreement, except to the extent Defendant will pay its share of employer payroll taxes associated with payments to Claimants pursuant to this Agreement that are attributable to back wages.

1.11.    The "Net Settlement Amount" means the Actual Expenses; the Settlement Administration Costs; the Attorneys' Fees, the Service Awards; and the Settlement Payments, as each of these terms are defined in this Agreement, paid from the Maximum Settlement Amount.

1.12.    The "Released Parties" means Defendant, including its former and present officers, directors, agents, employees, attorneys, insurers, benefit plans, predecessors, successors, parents, subsidiaries, and affiliated entities.

1.13.    "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Named Plaintiff, Current Opt-In Plaintiff, FLSA Opt-In Plaintiff, and Rule 23 Class Member who does not Opt Out has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to payment of wages for hours worked through May 8, 2020 except to the extent that any such claim may not

4

be waived as a matter of law. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201 *et seq*., any and all claims under Pennsylvania or New York state law, including but not limited to PMWA, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 100, et seq., to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Members' account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claim of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including May 8, 2020. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment but not related to the payment of minimum and

overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state law statutes. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

## 2. NO ADMISSION OF LIABILITY; COMPROMISE ACKNOWLEDGEMENT

2.1. The Parties agree that this Agreement is entered into solely on the basis of a compromise of disputed claims, and this Agreement is not, and is not to be construed as, an admission by either Party of any liability whatsoever. Nor is it, and nor will it be construed as, an admission of any act or fact whatsoever, including any violation of federal, state, local, or common law, statute, ordinance, directive, regulation, or order. This Agreement, and any communications, papers, proceedings, or orders related to this Agreement, are settlement documents and shall be inadmissible in evidence in any proceeding, other than an action or proceeding to approve, interpret, or enforce this Agreement.

2.2. The Parties have investigated the facts and law during this Litigation, including obtaining and reviewing declarations and statements from Named Plaintiffs and Current Opt-in Plaintiffs regarding job duties and unpaid overtime hours worked; reviewing documents related to Defendant's policies and practices; analyzing emails and other documents related to the Settlement Class Members' job duties and decision-making authority; and analyzing Defendant's payroll records. The Parties have also analyzed the applicable law and the damages claimed by Named Plaintiffs. Relying on their fact investigations, analyses, and the law, the Parties have engaged in arm's length settlement negotiations.

2.3.    Named Plaintiffs believe the claims asserted in the action have merit. However, Named Plaintiffs recognize the expense and length of continued litigation through prolonged discovery, vigorous motions practice concerning, *inter alia*, the enforceability of Defendant's arbitration agreements and/or severance agreements precluding litigation, the possibility that either the FLSA Collective Action and/or the Rule 23 Class Action may not be certified, or later decertified, summary judgment motions practice regarding Defendant's claimed exemption defenses, and other liability issues, the possibility of an adverse ruling on Defendant's pending motion to dismiss, the difficulties in proving damages on a class-wide basis, the trial, and possible appeals. Named Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, as well as the delays inherent in such litigation and the likelihood of protracted appellate review. Named Plaintiffs believe that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interests of the Settlement Class Members.

2.4.    Defendant maintains that it has complied with its obligations under the FLSA and state law and believes Named Plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail. Defendant maintains that the arbitration agreements and severance agreements executed by certain Settlement Class Members prior to and during this Litigation are enforceable, and denies that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for purposes of settlement. Defendant has vigorously contested the claims, but Defendant has taken into account the uncertainty and risks inherent in any litigation and believes that further litigation would likely be protracted, expensive, and contrary to its best interests. Substantial amounts of time, energy, and other resources have been and, absent settlement, will

7

continue to be committed to Defendant's defenses against the claims asserted in this Litigation. In light of these factors, Defendant believes that settlement is the best way to resolve the disputes among the parties while minimizing its own further expenditures.

2.5.    The settlement will not be considered a concession or admission by Defendant of any violation of federal, state, or local law, statute, regulation, rule or order or any obligation or duty at law or in equity. Defendant's agreement to resolve the claims of all Settlement Class Members will not be considered an admission or concession that collective or class action treatment would have been appropriate in this action for any purpose other than settlement, or that collective or class action treatment would be appropriate in any other action.

2.6.    Nothing in this Agreement will be deemed a concession or admission by any party as to the amount of time the Settlement Class Members worked, including any amount of time in excess of 40 hours in a work week.

2.7.    Class Counsel, after consultation with the Named Plaintiffs, have independently determined that settlement and dismissal of the claims asserted in this Litigation are proper under the circumstances of this action and the terms of this Agreement.

2.8.    This Agreement contains all of the agreements between the Parties and their respective counsel relating to this settlement of the Litigation. There are no undisclosed side agreements between the Parties or their counsel.  At all times, the negotiations leading to the Agreement were adversarial, non-collusive, and at arm's-length.

3.    **TIMELINE FOR SETTLEMENT**

3.1.    The Parties contemplate the following timeline of settlement events:

a.    Within fourteen (14) calendar days of the execution of this Agreement by all Parties, the Parties will jointly submit a Motion for Preliminary Approval of Class and

8

Collective Action Settlement as set forth in Paragraph 5.3 of this Agreement. The date on which the Court issues an order granting such motion is referred to herein as the "Preliminary Approval Date."

b.    Within five (5) business days of the date that the Parties execute this Agreement, Defendant will provide the Class List to the Settlement Administrator, as set forth in Paragraph 4.2 of this Agreement.

c.    Within fourteen (14) calendar days of the Preliminary Approval Date, the Settlement Administrator will distribute the Notice Packet, as set forth in Paragraph 6.1 of this Agreement. The date on which the Settlement Administrator distributes the Notice Packet is referred to herein as the "Notice Distribution Date."

d.    FLSA Putative Class Members shall have sixty (60) calendar days from the Notice Distribution Date to submit an Opt In Form to opt into the Litigation, or object to the Settlement, as set forth in Paragraphs 7.2 and 9.1 of this Agreement.

e.    Rule 23 Class Members, exclusive of any Named Plaintiff shall have sixty (60) calendar days from the Notice Distribution Date to submit a Rule 23 Claim Form, Opt Out Statement or object to the Settlement, as set forth in Paragraphs 7.3, 8.1 and 9.1 of this Agreement.

f.    No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Petition for Attorneys' Fees and Litigation Expenses, as set forth in Paragraph 10.1 and 10.4 of this Agreement.

g.    No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Motion for Final Approval of Settlement, as set forth in Paragraph 10.2 of this Agreement. The Court's order granting such

9

motion is referred to herein as the "Final Approval Order," and the date such order is issued by the Court is referred to herein as the "Final Approval Date."

h.      Within five (5) calendar days of the Final Approval Date, the Settlement Administrator shall provide the Settlement Administrator Report as defined and set forth in Paragraph 11.3 of this Agreement.

i.      The "Effective Date" shall be the date on which the Final Approval Order is no longer appealable, or, if an appeal is filed, the date on which such appeal is final.

j.      Within fourteen (14) calendar days of the Effective Date, Defendant will deposit the Net Settlement Amount, plus the employer's share of applicable payroll taxes, into the QSF, as set forth in Paragraph 11.4 of this Agreement.

k.      Within five (5) calendar days after Defendant funds the QSF, the Settlement Administrator shall mail the Settlement Payments and Service Awards (as applicable) to Claimants, as set forth in Paragraph 13.1 and 14.1 of this Agreement, and shall provide Class Counsel their Attorneys' Fees and Actual Expenses as set forth in the Final Approval Order.

l.      The deadline for Claimants to cash Settlement Payments and Service Awards will be one hundred twenty (120) days from the date such Settlement Payments and Service Awards are issued by the Settlement Administrator.  This one hundred twenty (120) day period shall be called the "Cashing Period." During the Cashing Period the Settlement Administrator shall reissue Settlement Payments and Service Awards at the request of any Claimant and provide the Parties, upon request, a list of all Claimants who have not cashed their Settlement Payments and Service Awards.

m.      Within sixty (60) calendar days of Cashing Period, the Settlement Administrator shall remit funds remaining from any uncashed Settlement Payments and

Settlement Awards to the unclaimed property fund in the state in which the Settlement Class Member worked and notify such class member by email and first-class mail.

**4.     APPOINTMENT OF SETTLEMENT ADMINISTRATOR**

4.1.     The parties agree that, subject to the approval of the Court, the Parties will retain the firm of Rust Consulting Services to act as the independent Settlement Administrator, provide the FLSA Notice and Rule 23 Notice as applicable to Settlement Class Members, distribute the Opt In Form and Rule 23 Claim Form as applicable, open and manage a Qualified Settlement Fund ("QSF") under Section 468B of the IRC and Treas. Re. § 1.468B-1 *et seq.*, distribute Settlement Payments and Service Awards, and perform other tasks consistent with the orders of this court or this Agreement. Defendant will be consulted by Class Counsel and/or the Settlement Administrator with respect to any issues that arise with regard to settlement administration, and the Parties agree to work together in good faith to resolve such issues. The Settlement Administrator will be paid for all Settlement Administration Costs out of the Maximum Settlement Amount described in Paragraph 12.3. The "Settlement Administration Costs" will not exceed $35,000, and shall be inclusive of the Settlement Administrator's fee and costs necessary to administer the Agreement.

4.2.     No later than the date set forth in Paragraph 3.1(b) above, Defendant will provide the Settlement Administrator with the (i) name, (ii) best known mailing address, (iii) known telephone number(s), (iv) known email address, and (v) Social Security Number of each Settlement Class Member (the "Class List").

4.3.     The actions of the Settlement Administrator shall be governed by the terms of the Agreement.  Class Counsel and Defendant's counsel may provide relevant information and guidance as needed by the Settlement Administrator in the performance of its duties, and engage

in related communications with the Settlement Administrator with notice and copies to one another, but without notice or copies to the Settlement Class Members or the Court, unless requested by the Court.

## 5. PRELIMINARY COURT APPROVAL OF SETTLEMENT

5.1.     For settlement purposes only, the Parties agree that: (a) a class may be certified in the Rule 23 Class Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of the Rule 23 Class Members; and (b) the FLSA Collective Action may be certified in accordance with 29 U.S.C. § 216(b) consisting of the FLSA Putative Class Members, and any applicable Current Opt-In Plaintiffs and Named Plaintiffs.  If this Agreement and the settlement it memorializes are not finally approved by the Court, or if any appeal results in a reversal of the Final Approval Order that affects: (i) the amount to be paid by Defendant under this Agreement; (ii) the releases given by the Named Plaintiffs, Current Opt-In Plaintiffs, FLSA Opt-In Plaintiffs and Rule 23 Class Members who do not Opt Out or (iii) any other material aspect of the Settlement, then this agreement for certification as stated in this Paragraph 5.1 shall become null and void, and any court order certifying the Rule 23 Class Members and/or the FLSA Putative Class Members and any applicable Current Opt-In Plaintiff and Named Plaintiffs based on this Agreement shall be vacated without prejudice to the right of the Parties to seek or oppose certification.

5.2.     This Agreement will become final and effective only upon the occurrence of all of the following events: (a) the Agreement is executed by the Named Plaintiffs, Defendant, and by Class Counsel and counsel for Defendants; (b) the Court approves the material terms of the settlement as set forth in the Agreement (including approval and final certification of the Rule 23 Class Action and FLSA Collective Action as set forth above) and enters, without material

change, the Preliminary Approval Order as set forth in Paragraph 5.3; (c) the Notice Packet is sent to the Settlement Class Members; (d) FLSA Putative Class Members are given the opportunity to submit an FLSA Opt-In Form; (e) Rule 23 Class Members are afforded the opportunity to exclude themselves from the Settlement by submission of an Opt Out Statement; (f) Rule 23 Class Members and FLSA Opt-In Plaintiffs are afforded the right to file written objections; (g) Defendant does not exercise its right to terminate this Agreement should more than 10% of the Rule 23 Class Members exercise their right to opt out of the Settlement and this Agreement, as set forth in Paragraph 8.1; and (h) the Court holds the Final Approval Hearing and enters a Final Approval Order dismissing this case with prejudice and sufficient time passes such that the Final Order is no longer appealable, or, if an appeal is filed, the Final Order is approved upon appeal.

5.3.    No later than the date set forth in Paragraph 3.1(a) above, the Parties will jointly submit this Agreement to the Court with an appropriate Motion for Preliminary Approval of Class and Collective Action Settlement. In such motion, the parties will request that the Court enter an order: (1) preliminarily approving the settlement reached by the parties in this action as embodied in this Agreement; (2) approving the form of FLSA settlement notice attached as **Exhibit B** (the "FLSA Notice"), the form of FLSA opt in form attached as **Exhibit C** (the "FLSA Opt In Form"), the form of Rule 23 proposed settlement notice attached as **Exhibit D** (the "Rule 23 Notice"), and the Rule 23 claim form attached as **Exhibit E** (the "Rule 23 Claim Form"); (3) appointing Rust Consulting as the Settlement Administrator; (4) appointing Plaintiffs' Counsel as Class Counsel; (5) enjoining Rule 23 Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Rule 23 Class Members have filed valid Opt Out Statements

13

with the Settlement Administrator and the time for filing claims with the Settlement Administrator has elapsed; and (6) setting a Final Approval and Fairness Hearing no earlier than ninety (90) days after Defendant provides notice to the appropriate governmental authorities in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, on the question of whether the Settlement, including without limitation, payment of Attorneys' Fees, Actual Expenses, and the Service Awards, should be finally approved as fair and reasonable.

5.4.    Defendant shall provide notice to the appropriate governmental authorities as set forth in Paragraph 5.3(6) no later than five (5) business days from the date of the Preliminary Approval Order.  Defendant also agrees to provide documents and information to the appropriate governmental authorities pursuant to 28 U.S.C. § 1715.

5.5.    If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, this Settlement Agreement will be null and void and the Litigation will resume as if no settlement had been attempted, except that the Statute of Limitations for all putative class members shall be tolled during the time-period between the execution of this Agreement and the Court's final denial of any initial or re-urged Preliminary Approval Motion.

## 6.    DISTRIBUTION OF APPROVED PROPOSED COLLECTIVE ACTION AND CLASS SETTLEMENT NOTICES

6.1.    No later than the date set forth in Paragraph 3.1(c) above, the Settlement Administrator will establish a website which includes the appropriate notices, and through which Settlement Class Members will be able to submit forms and shall mail and email the following: (i) an FLSA Settlement Notice to each FLSA Named Plaintiff, Current Opt-In Plaintiff, and FLSA Putative Class Member, (ii) an FLSA Opt In Form to each FLSA Putative Class Member,

Case 3:19-cv-00119   Document 92-1   Filed 05/08/20   Page 14 of 63 PageID #: 1322

(iii) a Rule 23 Notice to Mary Beth Herwald, and the Current Opt-in Plaintiffs identified as Rule 23 Class Members in Paragraph 1.6, and (iv) a Rule 23 Notice and Rule 23 Claim Form to each of the remaining Rule 23 Class Members (collectively, as applicable, the "Notice Packet"). Before mailing the Notice Packet, the Settlement Administrator will run the mailing addresses from the Class List through the National Change of Address ("NCOA") database of the United States Post Office.

6.2. The Settlement Administrator will conduct an address trace on all Settlement Class Members whose Notice Packet is returned undeliverable and will resend the Notice Packet to all updated addressed obtained through the trace. The Response Deadline will be extended by 15 days from the later of the date such Notice Packet is re-mailed or the Response Deadline or any Settlement Class Member whose Notice Packet is returned undeliverable. Unless a Notice Packet is returned to the Settlement Administrator by U.S. Postal Service as undeliverable, each Notice Packet shall be deemed mailed and received by the Settlement Class Member to whom it was sent seven (7) after mailing.

6.3. The Settlement Administrator will send via both email and United States mail a reminder postcard 30 days prior to the Response Deadline to all FLSA Putative Class Members and Rule 23 Class Members who have not retuned a completed form by that date.

## 7.      RETURN OF FLSA OPT IN FORMS AND RULE 23 CLAIM FORMS

7.1. The date that is sixty (60) days after the Notice Distribution Date is referred to herein as the "Response Deadline." The Settlement Administrator will advise Class Counsel and Defendant's counsel of the date of the Notice Distribution Date and the Response Deadline within five (5) calendar days after the Settlement Administrator distributes the Notice Packets to the Settlement Class Members.

7.2.    FLSA Putative Class Members will have until the Response Deadline to return a materially completed FLSA Opt In Form by email, electronically via e-signature or website submission, or by first class mail postmarked no later than the Response Deadline in order to be a Claimant for the purpose of receiving a Settlement Payment. Any FLSA Putative Class Members that do not timely return an FLSA Opt In Form will not opt into the Litigation, will not be a Claimant, will not receive a Settlement Payment, and will not release any claims pursuant to this Agreement.

7.3.    The Rule 23 Class Members will have until the Response Deadline to return a materially completed Rule 23 Claim Form by email, electronically via e-signature or website submission, or by first class mail postmarked no later than the Response Deadline in order to be a Claimant for the purpose of receiving a Settlement Payment.

7.4.    The Settlement Administrator shall review each Rule 23 Claim Form and FLSA Opt In Form for timeliness and completeness.  In the event a Rule 23 Claim Form or FLSA Opt In Form is timely but is not materially complete, the Settlement Administrator shall immediately notify the Settlement Class Member, via email and U.S. mail about the deficiency.  The Settlement Class Member shall have 14 (fourteen) days from the later of the date of mailing of the deficiency notice or the Response Deadline to cure the deficiency and resubmit the applicable form, after which the Settlement Class Member will be ineligible to receive any payment under this Agreement.  A form is materially complete if it is signed electronically or by regular signature.  The Settlement Administrator shall notify Class Counsel in writing the names of any Settlement Class Member for whom the Settlement Administrator has received a deficient Rule 23 Claim Form or FLSA Opt In Form or whose submissions that the Settlement Administrator cannot read or open.

## 8.  RULE 23 OPT OUT PROCEDURE

8.1.    If a Rule 23 Class Member intends to opt out of the Litigation, he or she must mail a written, personally signed statement ("Opt Out Statement") to the Settlement Administrator that states: "I request to be excluded from the settlement in *Barbee, et al., v. naviHealth, Inc.*, Case No. 3:19-cv-00119 (USDC Middle District of Tennessee, Nashville Division).  I affirm that I was employed by Defendant as an exempt employee in one of the positions identified in the Notice Packet as being a Rule 23 Class Member and paid on a salary basis at some point in time from April 12, 2016 through December 12, 2019."  The Rule 23 Class Member must also include his or her name, address, and telephone number(s). To be effective, the Opt Out Statement must be mailed to the Settlement Administrator via First Class United States Mail, postage prepaid and postmarked by the Response Deadline.

8.2.    The Settlement Administrator shall retain copies of any Opt Out Statements and provide them to Defendant and Class Counsel within three (3) business days of receipt. The Settlement Administrator shall serve a final list of all Opt Out Statements to the Parties within three (3) business days of the Response Deadline.

8.3.    If a Rule 23 Class Member submits both a timely Rule 23 Claim Form and an Opt Out Statement, the Settlement Administrator shall promptly notify and send copies of the Rule 23 Claim Form and Opt Out Statement to both counsel for Defendant and Class Counsel, shall provide Class Counsel with such Rule 23 Class Member's last known address as reflected in the data, and Class Counsel will attempt to contact that individual to ascertain his or her intent.  If those efforts are unsuccessful, whichever document was mailed or submitted electronically later will govern, and if both documents were submitted simultaneously, or the sequence of mailings/submission cannot be determined, then the Rule 23 Claim Form shall govern.

17

8.4.    Class Counsel will, within five (5) business days after the Response Deadline, file with the Court via ECF copies of any Opt Out Statements.

8.5.    Any Rule 23 Class Member who does not timely submit an Opt Out Statement pursuant to this Agreement will be deemed to have accepted the Settlement, and the terms of this Agreement, including the Release as set forth in Paragraph 16.2 of this Agreement, and will have forever waived his or her right to opt out of the Litigation.

8.6.    The Parties agree that Named Plaintiffs and Current Opt-In Plaintiffs may not exclude themselves from the Settlement.

8.7.    Any Rule 23 Class Member who submits a timely and valid Opt Out Statement shall not: (1) be bound by any orders or judgments entered in this Litigation; (ii) be entitled to benefits or relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to the Settlement or appeal from any order of the Court.

8.8.    In the event more than 10% of the Rule 23 Class Members opt out of the lawsuit, Defendant shall have the right, at its option, to void this Agreement in accordance with the procedures outlined in Paragraph 29.3.

9.    **OBJECTIONS TO SETTLEMENT**

9.1.    Only Rule 23 Class Members and/or FLSA Opt-In Plaintiffs, excluding any Current Opt-In Plaintiff and Named Plaintiff, may object to the Settlement.  To object to the Agreement, such individual must file with the U.S. District Court for the Middle District of Tennessee either a written objection to the Settlement or a written notice of their intention to appear and object at the Fairness Hearing, with copies to the Settlement Administrator no later than the Response Deadline. The statement must set forth in clear and concise terms, the legal and factual arguments supporting the objection, and any reasons not included in the statement

will not be considered. The statement must also include the name, address, email, and telephone number for the individual making the objection. The Settlement Administrator will provide the Parties with copies of each objection by email within one (1) business day of receipt. Class Counsel will file the originals of any and all objections with the Court within three (3) business days after the Response Deadline.

9.2. An individual who files objections to the Settlement in accordance with Paragraph 9.1 ("Objector") has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written statement. A Rule 23 Class Member who has submitted an Opt Out Statement may not submit objections to the Settlement.

9.3. The Parties may file with the Court written responses to any filed objections no later than three (3) business days before the Fairness Hearing.

9.4. At no time shall either Party or their counsel seek to solicit or otherwise encourage Settlement Class Members to submit written objections to the Settlement, request exclusion from the Settlement, or appeal the Court's final judgment.

9.5. Any Objector whose objection is overruled will be paid his/her allocation under the Settlement as if that Objector had submitted a timely Rule 23 Claim Form or FLSA Opt In Form.

9.6.    Individuals who fail to timely object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise.

## 10.    FINAL APPROVAL AND FAIRNESS HEARING

10.1.    No later than the date set forth in Paragraph 3.1(f), Class Counsel will file a Petition for Attorneys' Fees and Litigation Expenses.

10.2.    No later than the date set forth in Paragraph 3.1(g), the Parties will jointly submit to the Court a memorandum of law and any necessary declarations, objections, or opt-out information in support of a Motion for Final Approval and Stipulation of Dismissal ("Final Approval Motion"). Class Counsel will draft the Final Approval Motion and supporting memorandum and will submit it to the Defendant for review and editing no later than three (3) business days prior to the deadline for submission to the Court.

10.3.    In the Final Approval Motion, the Parties will request that the Court, among other things: (1) state that there is a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, overtime compensation, or statutory damages; (2) approve the Agreement, including all information contained in the Notice Packet, as fair, reasonable, adequate, and binding on all Named Plaintiffs, FLSA Opt-In Plaintiffs, Current Opt-In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the settlement; (3) approve the procedure for Defendant to pay the Net Settlement Amount into the QSF as described in Paragraph 11.4; (4) order Administration of the QSF as described in Paragraphs 11-15; (5) order the dismissal with prejudice of the claims of all Named Plaintiffs, FLSA Opt-In Plaintiffs, Current Opt-In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the Settlement; (6) order entry of a Stipulation of Dismissal in accordance with this

Agreement; 7) approve the Attorneys' Fees and Actual Expenses set forth in Paragraph 10.4; and, (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement.

10.4.   Class Counsel will seek an award of Attorneys' Fees of $1,563,332.00 ("Attorneys' Fees"), which equals 33 1/3 percent of the Maximum Settlement Amount. These Attorneys' Fees shall be paid from the Maximum Settlement Amount defined in Paragraph 12.4. In addition, Class Counsel will be reimbursed $15,881.00 for out-of-pocket expenses ("Actual Expenses") from the Maximum Settlement Amount. The Settlement Administration Costs will also come out of the Maximum Settlement Amount in an amount not to exceed $35,000. Defendant does not and will not oppose Class Counsel's request for Attorneys' Fees and Actual Expenses to the extent the amounts requested are equal to or less than the amounts set forth in this Paragraph.

10.5.   If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Parties will resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying final approval; or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

10.6.   In the event this Agreement does not become final and the Notice Packets have already been sent to Settlement Class Members, the Settlement Administrator will provide notice to the Settlement Class Members, in a form jointly agreed upon by the Parties, that the Agreement did not receive final approval and that, as a result, no Settlement Payments will be made to Claimants under the Agreement. Such notice shall be mailed by the Settlement

Administrator via First Class U.S. Mail, postage prepaid, to the addresses used by the Settlement Administrator in mailing the Notice Packets, and shall also be sent by email to those Settlement Class Members for whom an email address is available. The costs of such mailing shall be split equally between Class Counsel and Defendant.

10.7.    In the event the Final Approval Order is consistent with the terms and conditions of this Agreement in all material respects, the Claimants, Class Counsel, and Defendant all hereby waive any and all rights to appeal the Final Approval Order.  The waiver in the preceding sentence does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

10.8.    Named Plaintiffs and Class Counsel understand and agree that any fee payments made under Paragraph 10.4 will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Named Plaintiffs, Settlement Class Members, Claimants, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of this Litigation.  As an inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against the Released Parties for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Paragraph 10.  As a further inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiffs, Current Opt-In Plaintiffs, and Class Counsel further understand and agree that the fee and cost payments made pursuant to Paragraph 10.4 will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted or discharged under this Paragraph, and warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims

for attorneys' fees or costs, including but not limited to, bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of the Litigation, and Named Plaintiffs, Current Opt-In Plaintiffs, and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendant of any liability for such fees and/or costs.  Furthermore, Named Plaintiffs, Current Opt-In Plaintiffs, and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorneys' fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with this Litigation, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Litigation.

## 11.    QUALIFIED SETTLEMENT FUND

11.1.   Defendant and Settlement Administrator will cause to be established and maintained a Qualified Settlement Fund to be designated the *Barbee* Qualified Settlement Fund ("QSF"). The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code ("Code") and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, et seq., and will be administered by the Settlement Administrator in accordance with the terms of this Agreement and in such a manner as to qualify and maintain the qualifications of the QSF under the aforementioned Code sections. The monies to establish, maintain, and fund the QSF will be part of the Settlement Administrative Cost which will come exclusively from the Maximum Settlement Amount provided for in Paragraph 11.4.

11.2.   The Settlement Administrator will apply for the employer identification number required for the QSF and will provide that number to Defendant within two (2) weeks after receiving it. The Settlement Administrator will comply with all applicable tax filings, withholdings, payments, and reporting requirements of the QSF, including those required by the

Code and applicable regulations thereunder. The Settlement Administrator will timely inform Defendant of any federal or state tax payment or filing obligations associated with or arising out of payments made by the QSF, although the Settlement Administrator shall be the one to make such payments as specified in Paragraphs 15.1 and 15.2.

      11.3.   No later than the date set forth in Paragraph 3.1(h), the Settlement Administrator will tender a report (the "Settlement Administrator Report") to Class Counsel and Defendant's counsel containing the following information: (1) the estimated gross Settlement Payments to each Claimant, before deduction of the Claimant's share of taxes and withholding; (2) the amount of the Settlement Payment attributed to wages; (3) the amount of the Settlement Payment attributed to interest, liquidated damages, and non-wage recovery; (4) the net Settlement Payment to the Claimant, after deduction of the Claimant's share of taxes and withholding; and (5) the amount of the Defendant's portion of the payroll taxes on the Settlement Payments to be paid by Defendant to the Settlement Administrator who shall remit such taxes to the appropriate taxing authorities on behalf of Defendant. The Settlement Administrator will further include in the Report: (a) the sum of the gross amount of all Settlement Payments; (b) the gross amount of the Defendant's portion of payroll taxes on all Settlement Payments; and (c) the total Settlement Administration Costs. In the event of any dispute as to the calculation of Defendant's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendant agrees to reasonably cooperate with the

Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Paragraph.

11.4. The following Net Settlement Amount, calculated in accordance with the terms of this Agreement and paid in Settlement of the Litigation, will count toward the Maximum Settlement Amount of up to $4,690,000:

11.4.1. Court-approved Settlement Payments to Claimants;

11.4.2. the Attorneys' Fees and Actual Expenses of Class Counsel as awarded by the Court;

11.4.3. the Service Awards, as awarded by the Court;

11.4.4. Settlement Administrative Costs (capped at $35,000);

11.4.5. those taxes that are withheld and tendered by the Settlement Administrator on behalf of the Claimants with respect to any Settlement Payments.

11.5. The total amounts owing and paid in Settlement (the Net Settlement Amount) may be less than the Maximum Settlement Amount, but may not exceed the Maximum Settlement Amount. In the event that Defendant advances funds into the QSF that are in excess of the aggregate amounts to be paid in Settlement and remain in the QSF, after the Settlement Administrator makes all payments in Settlement of the Litigation and described herein, such funds shall remain property of Defendant and be retained by or returned to Defendant.

11.6. No later than the date set forth in Paragraph 3.1(j), Defendant will send the Net Settlement Amount plus the employer's share of applicable payroll taxes to the Settlement Administrator, for deposit into the QSF. As transferor of the funds to be deposited in the QSF, Defendant will prepare and file the information statements concerning its payments to the QSF as required to be provided to the IRS pursuant to the regulations under Code § 468B. Defendant

will be responsible for paying its share of employer payroll taxes. The employer payroll taxes will not come out of the Maximum Settlement Amount deposited in the QSF.

11.7.   The Settlement Administrator shall have full responsibility for all distributions from the QSF. Defendant, Defendant's Counsel, Named Plaintiffs, Current Opt-In Plaintiffs, and Class Counsel shall not have any obligation or liability regarding distributions from the QSF to any Claimant. Any person who does not receive a Settlement Payment will have no recourse against Defendant, Defendant's Counsel, Named Plaintiffs, Current Opt-In Plaintiffs, or Class Counsel for failure to receive any payment due under this Agreement.

11.8.   The Parties shall have the right to inspect the records of the QSF, including but not limited to, imaged copies of the front and back of endorsed checks, and any correspondence between the Settlement Administrator and Claimants relating to disputes over payments.

11.9.   The QSF will terminate twelve (12) months after the Settlement Administrator initially mails the Settlement Checks to Claimants.

## 12.   DISTRIBUTION OF NET SETTLEMENT AMOUNT

12.1.   The parties agree that the Net Settlement Amount will be distributed as set forth in this Paragraph 12.

12.2.   Class Counsel will be reimbursed for the Actual Expenses of Litigation in an amount not to exceed $15,751.13.

12.3.   The Settlement Administrator will be paid Settlement Administration Costs in an amount not to exceed $35,000.

12.4.   Class Counsel will receive an award of Attorneys' Fees of $1,563,332.00 in accordance with the Court's Final Approval Order.

12.5.   Subject to Court approval, the parties agree that up to $31,000.00 of the Maximum Settlement Amount will be paid as "Service Awards" to the Named Plaintiffs in recognition of their service to the Settlement Class Members as follows: $10,000.00 to Lead Named Plaintiff Mae Barbee, $7,000.00 to Named Plaintiff Donna Trone; $7,000.00 to Named Plaintiff Sheree Montgomery; and $7,000.00 to Named Plaintiff Mary Beth Herwald.

12.6.   The Attorneys' Fees and Actual Expenses set forth in Paragraphs 12.2 and 12.4 shall be distributed by the Settlement Administrator to Class Counsel per instructions to be provided to the Settlement Administrator within five (5) business days after the Defendant funds the QSF.

12.7.   After the amounts described in Paragraphs 12.2, 12.3, 12.4 and 12.5 are deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Claimants who timely make a claim as set forth in this Agreement. Taking into consideration the risk of not obtaining collective action certification, the risk of not obtaining Rule 23 class action certification, decertification, enforcement of arbitration agreements and/or severance agreements to bar Settlement Class Members from participating in this action, litigation risk with respect to Defendant's exemption defenses, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, risks related to proving that the Settlement Class Members were suffered or permitted to work overtime given the remote nature of most Settlement Class Members' work, the well-established rate at which overtime backpay is calculated in exemption cases in Pennsylvania (i.e., at 1.5 times the regular rate of pay) and, conversely, the rate at which overtime pay is presumptively calculated outside of Pennsylvania (i.e., at 0.5 times the regular rate of pay), up to $1,533,062.73 of the Net Settlement Fund will be allocated to the FLSA Collective Action ("FLSA Settlement Fund") and up to $1,511,854.14 of

the Net Settlement Fund will be allocated to the Rule 23 Class Action ("Rule 23 Settlement Fund") (collectively, all payments from the FLSA Settlement Fund and Rule 23 Settlement Fund being the "Settlement Payments"). The minimum Settlement Payment to any Claimant will be $100.00. The portions of the FLSA Settlement Fund and the Rule 23 Settlement Fund allocated to Claimants, as calculated by Class Counsel in the manner described in Paragraphs 12.8 and 12.9, will be distributed to Claimants in the amount set forth in the spreadsheet provided to Defendant's counsel on March 31, 2020 (the "Settlement Distribution Data").

12.8. The Settlement Payment amounts to be paid from the FLSA Settlement Funds were calculated based on each FLSA Putative Class Member's, and any Current Opt In Plaintiffs or Named Plaintiffs who are not a Rule 23 Class Member Claimant, pro-rated amount of backpay computed at 0.5 times the regular rate of pay during the applicable Class Period. The regular rate, including each individual's bi-weekly salary, and the total number of weeks that each such individual worked in the relevant recovery period (as set forth below), was based on the Data. The estimated average amount of unpaid overtime worked which, to achieve settlement, was discounted to account for the substantial litigation risk Claimants faced absent settlement. Twenty-seven (27) of the Named Plaintiffs, Current Opt-In Plaintiffs and FLSA Putative Opt-In Plaintiffs were employed as Licensed Practical Nurses ("LPN") or Licensed Vocational Nurses ("LVN"), and will receive 2 times their pro-rated amount prior to distribution to the non-LPN and LVN Claimants, such total amount being set forth in the Settlement Distribution Data. The recovery period used for Settlement extends three (3) years back from the earlier of the individual's opt-in date, or April 12, 2019, the date that the First Amended Complaint was filed, and extends up through December 12, 2019, the last date of the data provided by Defendant to Plaintiffs to calculate damages for mediation. Fifty percent (50%) of each such Settlement

28

Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages. Only those FLSA Putative Plaintiffs who timely submit an Opt In Form as required in Paragraph 7.2 will receive a Settlement Payment.

 12.9. The Settlement Payment amounts to be paid from the Rule 23 Class Settlement Fund were calculated based on the Rule 23 Class Member's pro-rated amount of backpay computed at 1.5 times the regular rate of pay pursuant to Pennsylvania state law during the applicable recovery period. The regular rate, including each individual's actual bi-weekly salary, and the total number of weeks that each individual worked in the relevant recovery period described below was based on the Data. The estimated average amount of unpaid overtime worked, which, to achieve settlement, was discounted to account for the substantial litigation risk the Rule 23 Class Members faced absent settlement. The Rule 23 Class Members who were employed as LPNs or LVNs will receive two (2) times their pro-rated amount prior to distribution to the non-LPN and LVN Claimants, such total amounts being set forth in the Settlement Distribution Data. The recovery period used for Settlement Payment calculations extends three years back from April 12, 2019, the date that the First Amended Complaint was filed, and extends through December 19, 2020. Fifty percent (50%) of each Rule 23 Class Member Claimant's award will constitute backpay, and fifty percent (50%) will constitute liquidated damages. Only those Rule 23 Class Members who timely submit a Rule 23 Claim Form as set forth in Paragraph 7.3 will receive a Settlement Payment. Named Plaintiff Mary Beth Herwald, and Current Opt-in Plaintiffs Suzanne Lochie, Elizabeth Maddalo, and Amy Miller will receive their payments from the Settlement Fund without having to submit a Rule 23 Claim Form.

 12.10. All Settlement Payments will be paid by check.

29

12.11. In the event the Settlement Payments allocated to the individual FLSA Opt-In Plaintiffs as set forth in the Settlement Distribution Data does not equal the FLSA Settlement Fund, the difference shall remain the property of Defendant and shall not be subject to any rights of third parties.  Such amounts shall be retained by Defendant.

12.12. In the event the Settlement Payments allocated to the individual Rule 23 Class Member Claimants as set forth in the Settlement Distribution Data does not equal the Rule 23 Settlement Fund, the difference shall remain the property of Defendant and shall not be subject to any rights of third parties.  Such amounts shall be retained by Defendant.

## 13. DISTRIBUTION OF FLSA SETTLEMENT CHECKS TO FLSA OPT-IN PLAINTIFFS

13.1.   Within fourteen (14) calendar days after Defendant funds the QSF, the Settlement Administrator will distribute Settlement Payments to the FLSA Opt-In Plaintiffs representing: (1) the back pay due as set forth in the Settlement Distribution Data less all applicable withholding taxes and deductions; (2) the amount of liquidated damages due under the Agreement as set forth in the Settlement Distribution Data; and (3) any Service Award owed. The Settlement Payments will state that they are valid for one hundred twenty (120) days. In addition, the Settlement Administrator will issue an IRS Form 1099, checking box 3 other income, for each FLSA Opt-In Plaintiff showing the amount of liquidated damages and Service Award paid (if applicable)  and an IRS Form W-2 showing the amount of back pay in the year it was paid.

13.2.   Other than the withholding and reporting requirements stated in this Paragraph 13, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

13.3. In the event that any funds from the FLSA Settlement Fund are not cashed by the FLSA Opt-In Plaintiffs within the Cashing Period, those amounts will be remitted to the unclaimed property fund in the state in which the Settlement Class Member worked and notify such class member by email and first-class mail. The Settlement Administrator shall provide Class Counsel and Defendant a list of all uncashed checks 30 days before the end of the Cashing Period or at such other times as requested by Class Counsel or Defendant.

## 14. DISTRIBUTION OF SETTLEMENT CHECKS TO RULE 23 CLASS MEMBERS

14.1. Within fourteen (14) calendar days after the Defendant funds the QSF, the Settlement Administrator will distribute Settlement Payments to the Rule 23 Class Member Claimants representing: (1) the back pay due as set forth in the Settlement Distribution Data less all applicable withholding taxes and deductions; (2) the amount of liquidated damages due under the Agreement as set forth in the Settlement Distribution Data; and (3) any Service Award owed. The Settlement Payments will state that they are valid for ninety (90) days. In addition, the Settlement Administrator will issue an IRS Form 1099, checking box 3 other income, for each Rule 23 Class Member Claimant showing the amount of liquidated damages and Service Award paid (if any) and an IRS Form W-2 showing the amount of back pay in the year it was paid.

14.2. Other than the withholding and reporting requirements stated in this Paragraph 14, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

14.3. In the event that any funds from the Rule 23 Settlement Fund are not cashed by the Rule 23 Class Member Claimants within the Cashing Period, those amounts will be remitted to the unclaimed property fund in the state in which the Settlement Class Member worked and notify such class member by email and first-class mail. The Settlement Administrator shall

provide Class Counsel and Defendant a list of all uncashed checks 30 days before the end of the Cashing Period or at such other times as requested by Class Counsel or Defendant.

**15. TAXES**

15.1.    It is each Claimants' ultimate obligation to pay the employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income. The Parties also agree that there must be proper withholding of federal, state, and local income taxes (with the state and local withholdings based on each Claimant's current state of residence), and the employees' share of FICA and Medicare on all settlement payments representing back wages. The Settlement Administrator will be responsible for calculating, withholding, and depositing or remitting the required amounts for federal, state, and local income taxes on all payments representing back wages, and the employees' share of FICA and Medicare. The Settlement Administrator will be responsible for preparing and distributing all appropriate tax forms associated with payments made by the Settlement Administrator, including, as appropriate, Form W-2 and Miscellaneous and/or interest Income Form 1099.

15.2.    The Settlement Administrator will be responsible for calculating and paying applicable FUTA, SUTA, and the employer's share of FICA and Medicare on all Settlement Payments representing back wages and will remit those payments to the appropriate taxing authorities and will give Defendant reasonable notice of such payments. The Defendant will be responsible for funding the QSF to pay the employer's share of all payroll taxes as described in Paragraphs 11.3 and 11.4 above. Within five (5) calendar days of the Final Approval Date, the Settlement Administrator will inform the Parties of its calculations, the amount of withholding, and amounts to be deposited and paid, in advance of any submission to government authorities or distributions to Claimants. The Parties will have five (5) business days to provide written notice

32

to the Settlement Administrator that they agree with the calculations or to provide corrected calculations. If no such notice or calculations are provided by the Parties, the Settlement Administrator may proceed with such submission or distribution on the assumption that its underlying calculations are correct.

15.3.  The Settlement Administrator shall provide the Parties with a copy of any communications sent to Claimants and a list of all Settlement Payments sent to Claimants, identifying for each check the amount and payee.

15.4.  To the extent permitted by law, in no event shall any Settlement Payment to a Claimant or any Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

## 16.    RELEASE BY SETTLEMENT CLASS MEMBERS

16.1.  The Named Plaintiffs remise, release and forever discharge all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted against the Released Parties, whether in tort, contract, or for violation of any state or federal statute, rule or regulation, including but not limited to the Fair Labor Standards Act, arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the

execution hereof with the sole exception of any claims which cannot be released as a matter of law ("General Release"). The General Release includes any unknown claims the Named Plaintiffs do not know or suspect to exist in their favor at the time of the General Release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement or the General Release. In exchange for providing this General Release, Defendant shall pay the Named Plaintiffs the Service Award and their additional Settlement Payment as calculated in accordance with this Agreement.

16.2. Upon the Final Approval Date, the Named Plaintiffs, Current Opt-In Plaintiffs, FLSA Opt In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the Settlement, on behalf of themselves and each of their heirs, representatives, successors, assigns and attorneys, shall be deemed to release and forever discharge all Released Claims of whatever nature against the Released Parties. These Settlement Class Members, including but not limited to Claimants, may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims. However, on the Final Approval Date, Named Plaintiffs, Current Opt-In Plaintiffs, FLSA Opt In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the Settlement, shall be deemed to have, and by operation of the Final Approval Order dismissing the Litigation with prejudice, shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or

without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

16.3. Each of the Named Plaintiffs, Current Opt-In Plaintiffs, FLSA Opt In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the Settlement by submitting a valid Opt Out Statement, forever agrees that he or she shall not institute any action seeking, nor accept, back pay, overtime premiums, penalties, liquidated damages, punitive damages, penalties of any nature, attorneys' fees and costs, or any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against the Released Parties, for any period through May 8, 2020, arising from any claims released in this Paragraph 16. This release shall become effective as of the Effective Date.

## 17. COMMUNICATIONS

17.1. Other than through the Court-approved FLSA Settlement Notice and Rule 23 Notice to be mailed to the Settlement Class Members Defendant or its counsel, shall initiate contact with any Settlement Class Member regarding the settlement or the claims process.

## 18. DISMISSAL OF ACTION

18.1. Named Plaintiffs and Current Opt-In Plaintiffs agree to dismissal of the Litigation with prejudice upon satisfaction of the conditions and timeline specified herein that result in the Court's entry of an Order Granting Joint Motion for Final Approval of Settlement.

## 19. RESOLUTION OF FUTURE DISPUTES

19.1. Named Plaintiffs and Current Opt-In Plaintiffs confirm that, other than this Litigation, there is no other wage-and-hour action, cause of action, claim, or complaint currently pending against Defendant or other Released Parties for compensation for the times covered by this lawsuit.

19.2.   The United States District Court for Middle District of Tennessee will have continuing jurisdiction to interpret and enforce this Agreement and to hear and adjudicate any dispute or litigation arising from the Agreement except as otherwise provided herein.

## 20.   DOCUMENTS

20.1.   Counsel for the Parties will, 365 days after the Settlement Administrator mails the Settlement Payments to the Claimants, destroy or return to counsel for the producing party all documents and information (including electronically stored information) produced by the other party or parties during the course of the Litigation. This obligation supersedes any obligation, right, or timing otherwise provided for by Local Rule. This Paragraph does not apply to publicly filed material or attorney work product.

## 21.   PARTIES' AUTHORITY

21.1.   The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to its terms and conditions, which the Parties agree are the result of lengthy, intensive arm's length negotiations.

21.2.   The Parties acknowledge that throughout the settlement negotiations that resulted in this Agreement they have been represented by counsel who are experienced in collective action litigation under the FLSA and class action litigation of the state law wage and hour claims at issue, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

21.3.   Upon approval by the Court, this Agreement shall bind all Named Plaintiffs, Current Opt-In Plaintiffs, FLSA Opt In Plaintiffs, and all Rule 23 Class Members who have not timely opted out of the Settlement to all terms set forth in this Agreement, so long as such

individual has not timely opted out of this settlement pursuant to the opt out procedures described herein in Paragraph 8.1.

21.4.    It is agreed that because the Claimants are so numerous, it is impossible or impracticable to have each Claimant execute the Agreement.  The FLSA Notice and the Rule 23 Notice, in the forms attached hereto, will advise all Settlement Class Members of the binding nature of the release of claims described in this Agreement (see Paragraph 16), and that the release will have the same force and effect upon every Settlement Class Member as if the Agreement were executed by each Settlement Class Member.

## 22.    MUTUAL FULL COOPERATION

22.1.    The Parties agree to cooperate fully to implement this Agreement, including but not limited to, executing such documents and taking such other action as is reasonably necessary to implement and effectuate the terms of this Agreement.

## 23.    ENFORCEMENT ACTIONS

23.1.    If any Party institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Agreement, the successful Party will be entitled to recover from the unsuccessful Party reasonable attorneys' fees and costs.

## 24.    MODIFICATION

24.1.    This Agreement and its Exhibits may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## 25.    ENTIRE AGREEMENT

25.1.    This Agreement and its Exhibits and the Settlement Distribution Data constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representation or terms will modify, vary, or contradict the terms of this Agreement.

## 26. CHOICE OF LAW/JURISDICTION

26.1.    This Agreement will be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Tennessee, both in its procedural and substantive aspects, and the continuing jurisdiction of the United States District Court for the Middle District of Tennessee. This Agreement will be construed as a whole according to its fair meaning and intent and not in favor of any Party, regardless of who drafted or was principally responsible for drafting the Agreement or any specific term or condition thereof.

## 27. COUNTERPARTS

27.1.    This Agreement may be executed in counterparts, and when Defendant and each Named Plaintiff have executed at least one counterpart, each counterpart will be deemed an original, and when taken together, will constitute one Agreement, which will be binding upon and effective as to all Parties.

## 28. NO PRIOR ASSIGNMENTS; BINDING ON ASSIGNS

28.1.    The Parties represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged in this Agreement.

28.2.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

## 29. VOIDING THE AGREEMENT

29.1.    In the event this Agreement, or any amended version agreed upon by the Parties, is not approved by the Court, the Agreement will be null and void in its entirety and the Parties

will revert to their respective positions prior to the Agreement, unless expressly agreed in writing by all Parties.

29.2.    If judicial approval of the Agreement is otherwise denied, the Parties agree in good faith to negotiate about appropriate revisions to such provisions rejected by the Court for a period not less than 45 calendar days following the date approval is denied, and re-submit for the Court's approval. The Parties will file a joint motion for a stay of the action during the period referred to in this Paragraph.

29.3.    If the number of Rule 23 Class Members who have duly requested exclusion from the Agreement in the manner provided in the Agreement equals or exceeds ten percent (10%), Defendant shall have the right, for seven (7) business days after the deadline for Rule 23 Class Members to opt-out (the Response Deadline), to either withdraw from and fully terminate this Agreement by providing written notice to Class Counsel and the Court, or not to withdraw from this Agreement.  Failure to provide written notice to withdraw within the aforesaid seven (7) day period constitutes a waiver and termination of Defendant's right to withdraw pursuant to this Paragraph.

/s/Molly A. Elkin
Molly A. Elkin
Hillary D. LeBeau
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
hdl@mselaborlaw.com

/s/Charles P. Yezbak
Charles P. Yezbak, III

/s/ Robert W. Horton___
Robert W. Horton (TN BPR #17417)
Mary Leigh Pirtle (TN BPR #26659)
Laura M. Mallory (TN BPR #31917)
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Tel.: (615) 742-6200
Fax: (615) 742-2799
bhorton@bassberry.com
mpirtle@bassberry.com
laura.mallory@bassberry.com

N. Chase Teeples
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

*Counsel for Defendant naviHealth, Inc.*

*/s/ Jack Siegel*
Jack Siegel
Texas Bar No. 24070621
SIEGEL LAW GROUP, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
Tel.: (214) 790-4454
jack@siegellawgroup.biz

*/s J. Derek Braziel*
J. Derek Braziel
Travis Gasper
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel.: (214) 749-1400
Fax: (214) 749-1010
jdbraziel@l-b-law.com
gasper@l-b-law.com

*/s/ Travis M. Hedgpeth*
Travis M. Hedgpeth
THE HEDGPETH LAW FIRM, PC
5438 Rutherglenn Drive
Houston, Texas 77096
Tel.: (512) 417-5716
travis@hedgpethlaw.com

*Counsel for Plaintiffs and The Settlement Classes*

_____    Date: 05 / 08 / 2020
Mae Barbee                                       _____

_Donna Trone_
_____    Date: 05 / 08 / 2020
Donna Trone                                      _____


_____    Date:_____
Sheree Montgomery


_____    Date:_____
Mary Beth Herwald

NAMED PLAINTIFFS


_____    Date:_____
naviHealth, Inc.

DEFENDANT


86177.5

Doc ID: f349ceeb902607ff9bfe9f38b880450c8a8996f9

_____     Date:_____
Mae Barbee


_____     Date:_____
Donna Trone


_____     Date: 5/7/2020
Sheree Montgomery


_____     Date: 5/7/2020
Mary Beth Herwald

NAMED PLAINTIFFS


_____     Date:_____
naviHealth, Inc.

DEFENDANT


86177.5

_____          Date:_____
Mae Barbee


_____          Date:_____
Donna Trone


_____          Date:_____
Sheree Montgomery


_____          Date:_____
Mary Beth Herwald

NAMED PLAINTIFFS


*Sarah Henry Akin*
_____          Date:_____5/8/20_____
naviHealth, Inc.

DEFENDANT


28207003.1

41

# Exhibit A

# Current Opt-In Plaintiffs

1. Kimberly Conner
2. Katrina Fetterolf
3. Ginger High
4. Karen James
5. Shana Ledbetter
6. Suzanne Lochie
7. Elizabeth Maddalo
8. Amy Miller
9. Kathleen Noe
10. Courtney Schlueter
11. Kacie Weatherford

# EXHIBIT B

[NAME]
[ADDRESS]
[CITY, STATE ZIP]
[Ref. No. ]
[SSN]

# NOTICE OF FLSA COLLECTIVE ACTION SETTLEMENT

### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

## You are entitled to a payment from a collective action lawsuit.

*A federal court has authorized this notice. This is not a solicitation from a lawyer.*

You are one of naviHealth's current or former Care Management Employees as that term is defined by the Plaintiffs in the FLSA Collective/Rule 23 Class Action filed in the United States District Court in the Middle District of Tennessee, *Barbee, et al v. naviHealth, Inc*. CASE NO. 3:19-cv-00119 (the "Lawsuit"). You are entitled to payment under a settlement reached in this case if you follow the steps outlined below. **To obtain your share of the settlement monies, you must complete and return the enclosed Opt-In Form so that it is emailed or postmarked by no later than X date.** [ 60 days after Notice Distribution Date], or submit your claim on-line as described in section 9 below.

For purposes of this settlement only, naviHealth is allowing you to join this lawsuit even if you signed an Arbitration Agreement and/or a Severance Agreement if you wish to do so.

Your rights and options – and the deadlines to exercise them – are explained in this notice. The Court in charge of this case must decide whether to approve the settlement. Payments will be made if the Court approves the settlement. Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **OPT-IN** | If you opt into the settlement, you will receive $X and you will release any and all federal and state law wage and hour claims you may have against naviHealth up through May 8, 2020, which is the date that the parties executed the Settlement Agreement. (*see* section 9 on how to claim your settlement monies) |
| **DO NOTHING** | If you do nothing, you will **not** receive any settlement monies and you will not release any wage and hour claims against the defendant. |
| **OBJECT** | You can object if you opt into the lawsuit. You can then write to the Court about why you believe the settlement is unfair or unreasonable. If the Court rejects your objection, you will be bound by the terms of the settlement. If you object, you may appear at the Fairness Hearing to speak to the Court about the fairness of the settlement. |

# BASIC INFORMATION

| **1. Why did I get this notice?** |
|---|

You have been identified by naviHealth as a current or former employee who performed Care Management Work as defined in the Lawsuit during the time period between April 12, 2016 and December 12, 2019. This case is broken into two classes – a class of employees with federal claims under the Fair Labor Standards Act ("FLSA") and a class of employees with state law claims under the Pennsylvania Minimum Wage Act. You are part of the FLSA (federal) class and have the right to "opt in" to the Lawsuit and receive a settlement payment. The Court ordered that you be sent this Notice because you have a right to know about a proposed settlement of this case, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after any objections are heard, payments will be mailed to FLSA Opt In Plaintiffs who timely opt into this lawsuit, and to Rule 23 Class Members employed as Care Management Employees in Pennsylvania who timely file a claim form. Since you are a Putative FLSA Plaintiff (a Care Management Employee that worked outside of Pennsylvania and California for naviHealth from April 12, 2016 to December 12, 2019), your settlement monies will come from the monies allocated to the FLSA claims if you timely submit the enclosed Opt-in Form. There are 1008 Putative FLSA plaintiffs, including you, who are being invited to complete an Opt-in Form to claim their settlement monies. This lawsuit is known as *Barbee, et al v. naviHealth, Inc.* CASE NO. 3:19-cv-00119. The people who filed the lawsuit are called the "Plaintiffs." naviHealth, Inc. is the Defendant.

| **2. What is this lawsuit about?** |
|---|

This lawsuit is about whether Defendant was required to pay Plaintiffs and other similarly situated employees overtime pay and failed to do so. Specifically, Plaintiffs allege that Defendant improperly classified them as "exempt" employees under the Fair Labor Standards Act and failed to pay them overtime pay for hours of work in excess of 40 hours in a workweek. Defendant denies all wage and hour claims and further submits that workers, including you, were properly classified as exempt from the federal overtime law.

| **3. Why is this a class and collective action?** |
|---|

In a class or collective action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members." In an FLSA collective action, similarly situated individuals are identified as being entitled to receive notice of the collective action and to decide if they want to "opt in" to the lawsuit and participate as a plaintiff in the litigation.

| **4. Why is there a settlement?** |
|---|

The Court has not ruled whether class or collective action treatment is appropriate in this case and has not issued a final judgment in favor of Plaintiffs or Defendant. Rather, in order to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement. Accordingly, the employees who filed the suit and naviHealth have reached a settlement agreement subject to final court approval. Both sides believe they would have prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a settlement.

# WHO IS IN THE SETTLEMENT

| **5. How do I know if I am part of the settlement?** |
|---|

Only those Care Management Employees who affirmatively timely return a completed Opt-in Form on or before X Date, [60 days after Notice is mailed] are part of the FLSA portion of the settlement.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| **6. What does the settlement provide?** |
|---|

naviHealth has agreed to pay up to $4,690,000.00 to resolve the entire case. This amount will be allocated as follows: up to $1,533,062.73 will be paid to the FLSA class members who join the case; up to $1,511,854.14 will be allocated to the Rule 23 Pennsylvania class claims; $31,000.00 will be allocated as Service Awards ($10,000.00 to the Lead Plaintiff, and $7,000 to the other three Named Plaintiffs) who filed this action and who served as Rule 23 and/or FLSA Class Representatives; $1,563,332.00 will be paid as attorneys' fees; up to $15,751.13 will be paid as litigation expenses; and, up to $35,000 will be paid to the third party Claims Administrator for expenses associated with administering the Settlement.

The individual settlement amounts for the FLSA Opt-in Plaintiffs is based on their pro-rated amount of backpay computed at .5 times the regular rate of pay, and are based on the Defendant's payroll records, each FLSA Opt-in Plaintiff's actual bi-weekly salary, the total number of weeks that each FLSA Opt-in Plaintiff worked since April 12, 2016, Plaintiffs' estimates of the average amount of unpaid overtime worked each week (10 hours) which, to achieve settlement, was discounted to account for the substantial litigation risk Plaintiffs faced absent settlement. Based on the strength of the 27 LPNs' FLSA claims as compared to the rest of the collective action members, the FLSA Opt-in Plaintiffs who were employed as LPNs will receive 2 times their pro-rated amount prior to distribution to the non-LPNs. The recovery period used for settlement extends three years back from the earlier of the FLSA Plaintiff's Opt-in date, or April 12, 2019, the date that the First Amended Complaint was filed, and extends up through December 12, 2019. Fifty percent (50%) of each FLSA Opt-in Plaintiff's FLSA award will constitute backpay; fifty percent (50%) of each FLSA Opt-in Plaintiff's FLSA award will constitute liquidated damages. **Only those FLSA Plaintiffs who timely submit an Opt-in Form will be paid an award.** Any monies not claimed from the FLSA net settlement fund will revert to naviHealth. If you timely submit the Opt-In Form, you will receive $-----------------. The settlement monies allocated as backpay will be reported to the IRS for tax purposes on a W-2 form, while the remaining monies will be reported to the IRS for tax purposes on a 1099-MISC form. Neither Class Counsel nor Defendant make any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

The Collective Action Representatives and Class Counsel determined that the settlement allocations were fair after considering a number of factors including the risk of not obtaining collective action certification, obtaining certification, but then facing decertification after discovery, Defendant's enforcement of the Arbitration Agreements and/or Severance Agreements to bar Plaintiffs from participating in this action absent settlement, litigation risk with respect to Defendant's FLSA exemption defenses, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, risks related to proving that Plaintiffs were suffered or permitted to work overtime given the remote nature of most Plaintiffs' work, the well-established rate at which overtime backpay is calculated in exemption cases in Pennsylvania (i.e., at 1.5 times the regular rate of pay) and, conversely, the rate at which

overtime pay is presumptively calculated outside of Pennsylvania (i.e., at .5 times the regular rate of pay).

## 7. What am I giving up?

If you opt into this settlement and the Court grants final approval of the settlement, your claim will be dismissed with prejudice and you will fully release and discharge Defendant through May 8, 2020 from all federal and state law wage and hour claims asserted, or which could have been asserted, in the Complaint. This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendant regarding the state or federal wage and hour claims brought in this case. The Settlement Release provides all FLSA Opt In Plaintiffs will be releasing all Released Claims which are defined as follows:

> "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Named Plaintiff, Current Opt-In Plaintiff, FLSA Opt-In Plaintiff, and Rule 23 Class Member who does not Opt Out has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to payment of wages for hours worked through May 8, 2020 except to the extent that any such claim may not be waived as a matter of law. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201 *et seq.*, any and all claims under Pennsylvania or New York state law, including but not limited to PMWA, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 100, et seq., to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Members' account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claim of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including May 8, 2020. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment but not the payment of minimum and overtime wages including without limitation Title VII, the

American with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state law statutes. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

If you do not opt into the settlement, you will not be paid any settlement monies and you will not be covered by this release.

## 8. Do I have a lawyer in this case?

The Court has decided that the Plaintiffs' lawyers (Molly Elkin of McGillivary Steele Elkin LLP; Jack Siegel of Siegel Law Group, PLLC; Travis Hedgpeth of The Hedgpeth Law Firm, PC, Charles P. Yezbak, III of Yezbak Law Offices, and Derek Braziel of Lee & Braziel, L.L.P.) are qualified to represent you and the collective action class and also all Rule 23 Pennsylvania Class Members. These lawyers are called "Class Counsel." You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney to be able to participate. The lawyer will be compensated in accordance with section 6 above.

## 9. How do I file a Claim?

You have three different ways to file your Claim Form:

(1) Complete and mail the enclosed Opt-in Form to the Settlement Administrator at the address below so that it is postmarked by no later than DATE. [60 days after Notice Distribution Date].

Address of Claims Administrator

or

(2) Return your completed Opt-in Form by email to email.comaddress by DATE; or

(3) Complete your Opt-in Form on-line at www.naviHealthsettlement.com by DATE.

## OBJECTING TO THE SETTLEMENT

## 10. How do I tell the Court if I don't like the settlement?

You may present objections to the proposed settlement at the Fairness Hearing if you first opt into the settlement and you make your objection in in writing. To be considered, such statement must be emailed or mailed to the Settlement Administrator via First Class United States Mail at the address listed above, postage prepaid and postmarked by _____. (60 days after notice mails). The statement must include all reasons for the objection. Any reasons not included in the statement will not be considered. The statement must also include your name, address, email address, telephone number, and social security number. If you file an objection, you have the right to appear at the Fairness Hearing either in person or through counsel hired by you. If you intend to appear, you must state your intention to do so in writing on your written objections at the time that you submit your written objections. An Objector may withdraw his or her objections at any time. No Opt-in Plaintiff may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

## THE COURT'S FAIRNESS HEARING

**11. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on_____ at the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, Tennessee, in Courtroom A859. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement, including the payment of fees and expenses to Class Counsel. We do not know how long these decisions will take.

**12. Do I have to come to the hearing?**

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**13. May I speak at the hearing?**

If you file a timely Objection to the Settlement, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words "I intend to appear at the Fairness Hearing" in your written objection, which must be filed according to the procedure described in section 10, above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

## GETTING MORE INFORMATION

**14. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the address set forth in section 9. If you have other questions about the settlement, you can contact the Settlement Administrator at the address above or at the phone number below.

DATED:        [Insert Date of Mailing], 2020

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **MAE BARBEE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | **Case No: 3:19-cv-00119** |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **v.** ) | **Collective Action** |
| ) | |
| ) | |
| **NAVIHEALTH, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**[NAME]**
**[ADDRESS]**
**[CITY, STATE ZIP]**
**[Ref. No. ]**

### <u>OPT-IN FORM</u>

I hereby opt into this lawsuit against naviHealth, Inc. and choose to be part of the settlement. I understand that the lawsuit has been settled, subject to final court approval, and that by opting in, I will receive my share of the Settlement as described in the Notice accompanying this Form. I understand that I must submit this Opt-in Form by email to XXX by DATE, [60 days after Notice Distribution Date], **or** by regular first-class mail, postage pre-paid, and postmarked by DATE, [60 days after Notice Distribution Date] to be paid my settlement monies. Alternatively, I can file my Opt-In form on line at www.naviHealthsettlement.com by DATE.

_____
Signature

_____
Print Name

# EXHIBIT D

**[NAME]**
**[ADDRESS]**
**[CITY, STATE ZIP]**
**[Ref. No. ]**
**[SSN]**

# NOTICE OF RULE 23 WAGE AND HOUR CLASS ACTION

### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

## You are entitled to a payment from a class action lawsuit.

*A federal court has authorized this notice. This is not a solicitation from a lawyer.*

You are one of naviHealth's current or former Care Management Employees, as that term is defined by the Plaintiffs in the FLSA Collective/Rule 23 Class Action filed in the United States District Court in the Middle District of Tennessee, Barbee, et al. v. naviHealth, Inc., CASE NO. 3:19-cv-0019 (the "Lawsuit"), and employed in Pennsylvania. You are entitled to payment under a settlement reached in this case if you follow the steps outlined below. **To obtain your share of the settlement monies, you must complete and return the enclosed Claim Form so that it is emailed or postmarked by no later than X Date.** [60 days after Notice Distribution Date], or submit your claim form on-line as described in section 9 below.

For purposes of this settlement only, naviHealth is allowing you to join this Lawsuit even if you signed an Arbitration Agreement and/or a Severance Agreement if you wish to do so.

Your rights and options – and the deadlines to exercise them – are explained in this notice. The Court in charge of this case must decide whether to approve the settlement. Payments will be made if the Court approves the settlement. Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM** | If you timely submit a Claim, you will receive $__ , and you will release any and all federal and state law wage and hour claims you may have against naviHealth up through May 8, 2020 which is the date that the parties executed the Settlement Agreement. (*see* section 9 on how to file a claim) |
| **DO NOTHING** | If you do nothing, you will **not** receive any settlement monies **but** you will still **release** any and all federal and state law wage and hour claims you may have against naviHealth up through X date. (Same date as box above) |
| **OPT OUT** | If you opt out by submitting an Opt Out Statement, you will not be part of the Lawsuit and you will not receive any settlement monies. If you opt out, you will not be subject to the release described in Section 7 below. |
| **OBJECT** | You can object to the Settlement by following the procedures set forth in Section 10 below. If the Court rejects your objection, you will still be bound by the terms of the settlement. If you object, you may appear at the Fairness Hearing to speak to the Court about the fairness of the settlement. |

QUESTIONS? CONTACT RUST CONSULTING BY PHONE AT 1-800

# BASIC INFORMATION

## 1. Why did I get this notice?

You have been identified by naviHealth as a current or former employee who performed Care Management Work as defined in the Lawsuit in Pennsylvania during the time period between April 12, 2016 and December 12, 2019. This case is broken into two classes – a class of employees with federal claims under the Fair Labor Standards Act ("FLSA") and a class of employees with state law claims under the Pennsylvania Minimum Wage Act. You are part of the Pennsylvania/Rule 23 class and have a right to file a claim and receive a settlement payment. The Court ordered that you be sent this Notice because you have a right to know about a proposed settlement of this case, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after any objections are heard, payments will be mailed to FLSA plaintiffs who timely opt into this lawsuit, and to Rule 23 Class Members, like you, who timely submit a Rule 23 Claim Form. Since you are a Rule 23 Class Member, your settlement monies will come from the monies allocated to the Rule 23 Class Members' claims if you timely submit a Rule 23 Claim Form. There are 168 Rule 23 Class Members, including you, who are being invited to complete a Claim Form to claim their settlement monies. This Lawsuit is known as *Barbee, et al v. naviHealth, Inc.* CASE NO. 3:19-cv-00119. The people who filed the lawsuit are called the "Plaintiffs." naviHealth, Inc. is the Defendant.

## 2. What is this Lawsuit about?

This Lawsuit is about whether Defendant was required to pay Plaintiffs and other similarly situated employees overtime pay and failed to do so. Specifically, Plaintiffs allege that Defendant improperly classified them as "exempt" employees under the Federal and state law and failed to pay them overtime pay for hours of work in excess of 40 hours in a workweek. Defendant denies all wage and hour claims and further submits that workers, including you, were properly classified as exempt from the federal overtime and from the Pennsylvania Minimum Wage Act.

## 3. Why is this a class and collective action?

In a class or collective action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members."

## 4. Why is there a settlement?

The Court has not ruled whether class or collective action treatment is appropriate in this case and has not issued a final judgment in favor of Plaintiffs or Defendant. Rather, in order to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement. Accordingly, the employees who filed the suit and naviHealth have reached a settlement agreement subject to final approval. Both sides believe they would have prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a settlement.

## WHO IS IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

Unless you affirmatively opt out, you are covered by the settlement. **However, only those Rule 23 Class Members who affirmatively submit a timely Rule 23 Claim Form will receive their share of the settlement monies.**

## THE SETTLEMENT BENEFITS – WHAT YOU GET

## 6. What does the settlement provide?

naviHealth has agreed to pay up to $4,690,000.00 to resolve the entire case. This amount will be allocated as follows: up to $1,533,062.73 will be paid to the FLSA class members that join the case; up to $1,511,854.13 will be allocated to the Rule 23 Class Members' Claims; $31,000.00 will be allocated as Service Awards ($10,000.00 to the Lead Plaintiff, and $7,000 to the other three Named Plaintiffs) who filed this action and who served as Rule 23 Pennsylvania and/or FLSA Class Representatives; $1,563,332.00 will be paid as attorneys' fees; up to $15,751.13, will be paid as litigation expenses; and, up to $35,000.00 will be paid to the third party Claims Administrator for expenses associated with administering the Settlement.

The individual settlement amounts for the Rule 23 Class Members is based on their pro-rated amount of backpay computed at 1.5 times the regular rate of pay, and are based on the Defendant's payroll records, each Rule 23 Class Member's actual bi-weekly salary, the total number of weeks that each Rule 23 Class Member worked since April 12, 2016, Plaintiffs' estimates of the average amount of unpaid overtime worked each week (10 hours) which, to achieve settlement, was discounted to account for the substantial litigation risk Plaintiffs faced absent settlement. Based on the strength of the 8 LPNs' wage and hour claims as compared to the rest of the Rule 23 Class Members, the Rule 23 Class Members who were employed as LPNs will receive 2 times their pro-rated amount prior to distribution to the non-LPNs. The recovery period extends three years back from April 12, 2019, the date that the Rule 23 Class Members' Claims were filed, and extends up through December 12, 2019. Fifty percent (50%) of each Rule 23 Class Member's settlement award will constitute backpay; fifty percent (50%) of each Rule Class Member's settlement award will constitute liquidated damages. **Only those Rule 23 Class Members who timely submit a Claim Form will be paid an award.** Any monies not claimed from the Pennsylvania Class Net Settlement fund will revert to naviHealth. If you timely submit a Rule 23 Claim Form, you will receive $------ -----------. The settlement monies allocated as backpay will be reported to the IRS for tax purposes on a W-2 form, while the remaining monies will be reported to the IRS for tax purposes on a 1099-MISC form. Neither Class Counsel nor Defendant make any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

The Class Representative and Class Counsel determined that the settlement allocations were fair after considering a number of factors including the risk of not obtaining class action certification, Defendant's enforcement of the Arbitration Agreements and/or Severance Agreements to bar Class Members from participating in this action absent settlement, litigation risk with respect to Defendant's exemption defenses, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, risks related to proving that Plaintiffs were suffered or permitted to work overtime given the remote nature of most Plaintiffs' work, the well-established rate at which overtime backpay is calculated in exemption cases in Pennsylvania (i.e., at 1.5 times the regular rate of pay) and, conversely, the rate at which overtime pay is presumptively calculated outside of Pennsylvania (i.e., at .5 times the regular rate of pay).

## 7. What am I giving up?

If you do not affirmatively opt out of the settlement, and the Court grants final approval of the settlement, your claim will be dismissed with prejudice and you will fully release and discharge Defendant through May 8, 2020 from all federal and state law wage and hour claims asserted, or which could have been asserted, in the Complaint. This means that you cannot sue, continue to sue,

or be party to any other lawsuit against Defendant regarding the state or federal wage and hour claims brought in this case. The Settlement Release provides that all Rule 23 Class Members will be releasing all Released Claims which are defined as follows:

> "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Named Plaintiff, Current Opt-In Plaintiff, FLSA Opt-In Plaintiff, and Rule 23 Class Member who does not Opt Out has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to payment of wages for hours worked through May 8, 2020 except to the extent that any such claim may not be waived as a matter of law. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201 *et seq*., any and all claims under Pennsylvania or New York state law, including but not limited to PMWA, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 100, et seq., to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Members' account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (v) any and all wage-and-hour laws or wage-related claim of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including May 8, 2020. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment but not the payment of minimum and overtime wages including without limitation Title VII, the American with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state law statutes. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

You will be covered by this release even if you do not submit a Rule Claim Form. However, you will only be paid your share of the settlement monies if you timely submit a Rule 23 Claim Form.

| **8. Do I have a lawyer in this case?** |
|---|

The Court has decided that the Plaintiffs' lawyers (Molly Elkin of McGillivary Steele Elkin LLP; Jack Siegel of Siegel Law Group, PLLC; Travis Hedgpeth of The Hedgpeth Law Firm, PC, Charles P. Yezbak, III of Yezbak Law Offices, and Derek Braziel of Lee & Braziel, L.L.P.) are qualified to represent you and the collective action class and also all Rule 23 Pennsylvania Class Members. These lawyers are called "Class Counsel." You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney to be able to participate. The lawyers will be compensated in accordance with section 6 above.

| **9. How do I file a Claim?** |
|---|

You have three different ways to file your Rule 23 Claim Form:

(1) Complete and mail the enclosed Rule 23 Claim Form to the Settlement Administrator at the address below so that it is postmarked by no later than DATE. [60days after Notice Distribution Date].

Address of Claims Administrator

or

(2) Return your completed Claim Form by email to email.comaddress by DATE; or

(3) Complete your Claim Form on-line at www.naviHealthsettlement.com by DATE.

## OBJECTING TO THE SETTLEMENT

| **10. How do I tell the Court if I don't like the settlement?** |
|---|

You may present objections to the proposed settlement at the Fairness Hearing and you make your objection in writing. To be considered, such statement must be emailed or mailed to the Settlement Administrator via First Class United States Mail at the address listed above, postage prepaid and postmarked by __Date_. (60 days after Notice Distribution Date). The statement must include all reasons for the objection. Any reasons not included in the statement will not be considered. The statement must also include your name, address, email address, telephone number, and social security number. If you file an objection, you have the right to appear at the Fairness Hearing either in person or through counsel hired by you. If you intend to appear, you must state your intention to do so in writing on your written objections at the time that you submit your written objections. An Objector may withdraw his or her objections at any time. No Pennsylvania Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

## OPTING OUT OF THE SETTLMENT

| **11. How do I opt out of the settlement?** |
|---|

You may opt out of the settlement by mailing a written, personally signed "Opt Out Statement" to the Settlement Administrator requesting exclusion. To be effective, you must include your name, address, and telephone number(s) in your Opt Out Statement and you must state "I request to be excluded from the settlement in *Barbee v. naviHealth* (USDC Middle District of Tennessee, Nashville Division). I affirm that I was employed by Defendant as an exempt employee in one of the positions identified in the Notice Packet as being a Rule 23 Class Member and paid on a salary basis at some point in time from April 12, 2016 through the Preliminary Approval Date." To be

effective, the Opt Out Statement must be mailed to the Settlement Administrator via First Class United States Mail, postage prepaid and postmarked or emailed by DATE. (60 Days after Notice Packet mailed)

## THE COURT'S FAIRNESS HEARING

| **12. When and where will the Court decide whether to approve the settlement?** |
| --- |

The Court will hold a Fairness Hearing on_____at the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, Tennessee, in Courtroom A859. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| **13. Do I have to come to the hearing?** |
| --- |

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| **14. May I speak at the hearing?** |
| --- |

If you file a timely Objection to the Settlement, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words "I intend to appear at the Fairness Hearing" in your written objection, which must be filed according to the procedure described in section 10 above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

## GETTING MORE INFORMATION

| **15. Are there more details about the settlement?** |
| --- |

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the address set forth in section 9. If you have other questions about the settlement, you can contact the Settlement Administrator at the address above or at the phone number below.

DATED:        [Insert Date of Mailing], 2020

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **MAE BARBEE, et al.,** ) | |
| ) | |
|   **Plaintiffs,** ) | **Case No: 3:19-cv-00119** |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **v.** ) | **Class Action** |
| ) | |
| ) | |
| **NAVIHEALTH, INC.,** ) | |
| ) | |
|   **Defendant.** ) | |

**[NAME]
[ADDRESS]
[CITY, STATE ZIP]
[Ref. No. ]**

## CLAIM FORM

     I hereby submit this claim in a lawsuit against naviHealth, Inc. and choose to be part of the settlement. I understand that the lawsuit has been settled and that by submitting this claim, I will receive my share of the Settlement as described in the Notice accompanying this Form. I understand that I must submit this Claim Form by email to XXX by DATE, [60 days after Notice Distribution Date], **or** by regular first-class mail, postage pre-paid, and postmarked by DATE, [60 days after Notice Distribution Date] to be paid my settlement monies. Alternatively, I can file my Claim on line at www.naviHealthsettlement.com by DATE.

 

 

_____
Signature

 

_____
Print Name